# Exhibit A



| Case Information Summary for Case Number |
| :---: |
| 2020-CH-04183 |

Filing Date: 05/14/2020

Division: Chancery Division

Ad Damnum: $0.00

Case Type: GENERAL CHANCERY

District: First Municipal

Calendar: 04

## Party Information

**Plaintiff(s)**

CITY OF CHICAGO

**Attorney(s)**

CORPORATION COUNSEL

30 N LASALLE 900

CHICAGO IL, 60602

(312) 742-0200

**Defendant(s)**

2550 PULASKI BUSINESS, IN

4901 CENTRAL INC. DBA MOB

IRVING SHELL GAS AND FOOD

JUUL LABS, INC.

LEAH MOL INC. DBA ROG MOB

T AND M GAS, INC. DBA SHE

**Defendant Date of Service**

**Attorney(s)**

VENIT STEVEN L

3240 W IRVING PK RD

CHICAGO IL, 60618

(773) 477-9998

## Case Activity

Activity Date: 05/14/2020

Participant: CITY OF CHICAGO

### GENERAL CHANCERY FILED (JURY DEMAND)

Court Fee: 423.50

Attorney: CORPORATION COUNSEL

Activity Date: 05/14/2020

Participant: CITY OF CHICAGO

### EXHIBITS FILED

Attorney: CORPORATION COUNSEL

Activity Date: 05/14/2020            Participant: CITY OF CHICAGO

## EXHIBITS FILED

Attorney: CORPORATION COUNSEL

Activity Date: 05/14/2020            Participant: CITY OF CHICAGO

## SUMMONS ISSUED AND RETURNABLE

Attorney: CORPORATION COUNSEL

Activity Date: 05/14/2020            Participant: CITY OF CHICAGO

## CASE SET ON CASE MANAGEMENT CALL

Date: 09/11/2020  
Court Time: 0930          Judge: CONLON, ALISON C.  
Court Room: 2408          Attorney: CORPORATION COUNSEL

Activity Date: 05/21/2020            Participant: JUUL LABS, INC.

## APPEARANCE FILED - FEE PAID -

Court Fee: 230.00          Attorney: VENIT STEVEN L

Activity Date: 05/21/2020            Participant: JUUL LABS, INC.

## ANSWER TO COMPLAINT FILED

Attorney: VENIT STEVEN L

Activity Date: 06/17/2020            Participant: CITY OF CHICAGO

## ALIAS SUMMONS ISSUED AND RETURNABLE

Court Fee: 5.00          Attorney: CORPORATION COUNSEL

Activity Date: 08/04/2020            Participant: CITY OF CHICAGO

## ALIAS SUMMONS ISSUED AND RETURNABLE

Court Fee: 5.00          Attorney: CORPORATION COUNSEL

Activity Date: 08/04/2020            Participant: JUUL LABS, INC.

## ELECTRONIC NOTICE SENT

Date: 09/11/2020  
Court Time: 0930          Attorney: VENIT STEVEN L  
Court Room: 2408          Microfilm: CH000000000

Activity Date: 08/18/2020                    Participant: 4901 CENTRAL INC. DBA MOB

                                 ALIAS SUMMONS - RETD P.S.

         Date: 08/18/2020


Activity Date: 08/25/2020                    Participant: ITVING SHELL GAS AND

                                 ALIAS SUMMONS - RETD P.S.

         Date: 08/25/2020


Activity Date: 09/04/2020                    Participant: CITY OF CHICAGO

                                 PRO HAC VICE

                                 Attorney: CORPORATION COUNSEL


Activity Date: 09/09/2020                    Participant: CITY OF CHICAGO

                             AFFIDAVIT OF SERVICE FILED

                                 Attorney: CORPORATION COUNSEL


Activity Date: 09/09/2020                    Participant: CITY OF CHICAGO

                             AFFIDAVIT OF SERVICE FILED

                                 Attorney: CORPORATION COUNSEL


Activity Date: 09/09/2020                    Participant: CITY OF CHICAGO

                             AFFIDAVIT OF SERVICE FILED

                                 Attorney: CORPORATION COUNSEL


Activity Date: 09/09/2020                    Participant: CITY OF CHICAGO

                             AFFIDAVIT OF SERVICE FILED

                                 Attorney: CORPORATION COUNSEL


Activity Date: 09/09/2020                    Participant: CITY OF CHICAGO

                             AFFIDAVIT OF SERVICE FILED

                                 Attorney: CORPORATION COUNSEL

[Back to Top](#)

Please note: Neither the Circuit Court of Cook County nor the Clerk of the
Circuit Court of Cook County warrants the accuracy, completeness, or the currency
of this data. This data is not an official record of the Court or the Clerk and may

not be represented as an official court record.

If data does not appear in a specific field, we likely do not have the responsive data in our master database.

Return Date: No return date scheduled
Hearing Date: 9/11/2020 9:30 AM - 9:30 AM
Courtroom Number: 2408
Location: District 1 Court
    Cook County, IL

FILED DATE: 5/14/2020 8:44 AM   2020CH04183

FILED
5/14/2020 8:44 AM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2020CH04183

9252279

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

| | |
|---|---|
| CITY OF CHICAGO,<br><br>a municipal corporation,<br><br>    Plaintiff,<br><br>v.<br><br>JUUL LABS, INC.,<br>LEAH MOL INC. D/B/A ROG MOBIL,<br>2550 PULASKI BUSINESS, INC. D/B/A MOBIL,<br>4901 CENTRAL INC. D/B/A MOBIL,<br>T AND M GAS, INC. D/B/A SHELL, and<br>IRVING SHELL GAS AND FOOD, INC.,<br><br>    Defendants. | Case No. **2020CH04183**<br><br>**REDACTED VERSION** |

## COMPLAINT AND DEMAND FOR A JURY TRIAL

Plaintiff City of Chicago files this Complaint against Defendants JUUL Labs, Inc.

("JUUL"), Leah Mol, Inc. doing business as Rog Mobil ("Rog Mobil"), 2550 Pulaski Business,

Inc. doing business as Mobil ("Pulaski Mobil"), 4901 Central Inc. doing business as Mobil

("Central Mobil"), T and M Gas, Inc. doing business as Shell ("T and M Shell"), and Irving

Shell Gas and Food, Inc. ("Irving Shell"), for violating the Municipal Code of Chicago ("MCC")

by engaging in unfair and/or deceptive acts or practices in marketing and/or selling JUUL

products to Chicago residents who are under 21 years of age. In support, Chicago alleges as

follows:

### INTRODUCTION

1. In a few short years, JUUL hooked a generation on e-cigarettes. JUUL's

marketing strategy was to "███████████████████████████████

███████████████████" It unabashedly marketed to youth—taking a page out of Big

FILED DATE: 5/14/2020 8:44 AM    2020CH04183

Tobacco's playbook—by branding its products as accessories for a cool, aspirational lifestyle. JUUL failed to implement adequate age verification procedures, resulting in significant sales to young people in Chicago. JUUL retailers also engaged in inadequate age verification and sales to young people in Chicago.

2.     The youth cigarette smoking rate has been steadily declining since the Tobacco Master Settlement Agreement ("MSA"), signed by 46 states, the District of Columbia and five U.S. territories in 1998. The MSA sought to reduce youth smoking in the United States by prohibiting the targeting of youth in conventional cigarette advertising. These gains are now threatened by the advent and growth of electronic cigarettes ("e-cigarettes"), battery-powered devices which produce an aerosol by heating a liquid that contains nicotine—the addictive drug in traditional cigarettes, cigars, and other tobacco products—flavorings, and other chemicals. *See* graphs below showing the correlation between e-cigarette use and the rise in youth use of any tobacco product (which includes e-cigarettes)[1] and comparing the rate of teen traditional cigarette use to teen e-cigarette use (also known as "vaping").[2]

---

[1] Julia Belluz, *The vape company JUUL said it doesn't target teens. Its early ads tell a different story.*, Vox (Jan. 25, 2019), https://www.vox.com/2019/1/25/18194953/vape-juul-e-cigarette-marketing.

[2] U.S. Food and Drug Administration, *2018 NYTS Data: A Startling Rise in Youth E-cigarette Use*, https://www.fda.gov/tobacco-products/youth-and-tobacco/2018-nyts-data-startling-rise-youth-e-cigarette-use (last updated Feb. 6, 2019).

FILED DATE: 5/14/2020 8:44 AM   2020CH04183





3. In 2018, then-FDA Commissioner Scott Gottlieb stated that youth e-cigarette use had reached "epidemic" proportions."[3] The "troubling reality," according to Dr. Gottlieb, is that e-cigarettes have "become wildly popular with kids."[4] Statistics confirm

---

[3] U.S. Food and Drug Administration, *Statement from FDA Commissioner Scott Gottlieb, M.D., on new steps to address epidemic of youth e-cigarette use* (Sept. 11, 2018), https://www.fda.gov/news-events/press-announcements/statement-fda-commissioner-scott-gottlieb-md-new-steps-address-epidemic-youth-e-cigarette-use.

[4] U.S. Food and Drug Administration, *Statement from FDA Commissioner Scott Gottlieb, M.D., on new enforcement actions and a Youth Tobacco Prevention Plan to stop youth use of, and access to, JUUL and other e-cigarettes* (Apr. 23, 2018), https://www.fda.gov/news-events/press-

FILED DATE: 5/14/2020 8:44 AM   2020CH04183

this.[5]  In 2011, just 1.5% of high school students reported vaping.  By 2019, however, 27.5% of high school students had vaped within the last 30 days.  Even more troubling, the current use rate among middle school students rose from 0.6% in 2011 to 10.5% in 2019.

4.      The Illinois Department of Public Health ("IDPH") has called youth e-cigarette use "an emerging public health threat."[6]  In Illinois, between 2016 to 2018, e-cigarette use increased from 18.4% to 26.7% among high school seniors, a 45% increase; a 15% increase was seen among 8th grade students; and a 65% increase among 10th grade students.  The IDPH warned: "E-cigarettes put youth at risk for addiction and possibly worse asthma outcomes, yet almost 40% of 10th and 12th grade youth believe there is low or no risk of negative health effects."

5.      Although more than two-thirds of teens nationally believe that e-cigarette use can be part of a "healthy life,"[7] the U.S. Surgeon General has declared youth use of e-cigarettes to be "unsafe."[8]  The Surgeon General explained that youth e-cigarette use (a) may cause an addiction to nicotine (b) "may have lasting deleterious consequences for brain development," (c) "can

---

announcements/statement-fda-commissioner-scott-gottlieb-md-new-enforcement-actions-and-youth-tobacco-prevention.

[5] Truth Initiative, *E-cigarettes: Facts, stats and regulations* (Nov. 11, 2019), https://truthinitiative.org/research-resources/emerging-tobacco-products/e-cigarettes-facts-stats-and-regulations.

[6] Illinois Department of Public Health, *E-cigarettes and Vapes*, http://www.dph.illinois.gov/topics-services/prevention-wellness/tobacco/e-cigarettes-and-vapes (last updated Jan. 16, 2020).

[7] Betsy McKay and Jennifer Maloney, *Youth Vaping Has Soared in 2018, New Data Show*, Wall St. J. (Sept. 21, 2018), https://www.wsj.com/articles/youth-vaping-has-soared-in-2018-new-data-show-1537481424.

[8] Office of the U.S. Surgeon General, *E-Cigarette Use Among Youth and Young Adults: A Report of the Surgeon General*, 6-7 (2016), https://e-cigarettes.surgeongeneral.gov/documents/2016_SGR_Full_Report_non-508.pdf.

expose users to several chemicals . . . known to have adverse health effects," and (d) is associated with higher use of traditional cigarettes later in life.

6.　　In 2015, JUUL introduced its e-cigarette, a sleek, USB-like device, that worked with its proprietary JUUL pod, a disposable cartridge containing a highly concentrated nicotine formulation.  JUUL's marketing—modeled after Big Tobacco—aggressively targeted youth by using young, attractive models and portraying its products as cool, harmless, and fun, rather than hazardous and addictive.  Like Big Tobacco, JUUL knew that almost no one starts using tobacco products after their mid-twenties.  Nearly 9 out of 10 smokers started smoking by age 18 and 99% started by age 26.[9]

7.　　JUUL conducted much of its wildly successful marketing campaign on social media and used celebrities and social media influencers popular with young audiences.  JUUL became so popular that people started referring to e-cigarette use as "juuling."  By the fall of 2018, JUUL controlled 75% of the e-cigarette market—more market share than Marlboro had at its peak.  *See* graph of JUUL's market share growth below.[10]  JUUL's sales have also more than tripled year over year.  JUUL generated $224 million in 2017, $1 billion in 2018, and had a forecasted revenue of $3.4 billion for 2019.  JUUL use is continuing to grow, particularly among young people.  Between 2018 and 2019, use of JUUL products among people aged 18 to 20 in the United States doubled from 11.9% to 23.9%.[11]

---

[9] Office of the U.S. Surgeon General, *Preventing Tobacco Use Among Youths, Surgeon General fact sheet*, https://www.hhs.gov/surgeongeneral/reports-and-publications/tobacco/preventing-youth-tobacco-use-factsheet/index.html (last updated June 6, 2017).
[10] Truth Initiative, *Behind the explosive growth of JUUL* (Jan. 3, 2019), https://truthinitiative.org/research-resources/emerging-tobacco-products/behind-explosive-growth-juul/.
[11] Donna M. Vallone et al., *Electronic Cigarette and JUUL Use Among Adolescents and Young Adults*, 174 JAMA Pediatr. 277, 282 (2020).

FILED DATE: 5/14/2020 8:44 AM   2020CH04183

FILED DATE: 5/14/2020 8:44 AM    2020CH04183



8.    JUUL sold a 35% stake in its company to Altria Group, Inc. (formerly Philip Morris), the producer of Marlboro, for $12.8 billion in 2018.  Shortly thereafter, JUUL made Altria's former "chief growth officer" the CEO of JUUL.

9.    When JUUL's popularity exploded in 2017, JUUL knew underage use was a contributing factor but did not take meaningful steps to curb the problem.  JUUL claims to restrict sales to people of legal age, however, it has failed to implement strict age verification requirements or adequately oversee retailers, resulting in significant sales to minors.

10.    Physical retail locations are the most common source for minors to purchase e-cigarette products.[12]  The Chicago Department of Business Affairs and Consumer Protection ("BACP") has rigorously monitored local retailers by conducting numerous undercover stings into the sale of tobacco products, resulting in about 700 citations from 2017 through 2019.  Last month, the City's inspectors witnessed each of the Retailer Defendants selling JUUL pods to minors despite, in some instances, knowing the minors' true age.

---

[12] Truth Initiative, *Where are kids getting JUUL?* (May 29, 2018), https://truthinitiative.org/research-resources/emerging-tobacco-products/where-are-kids-getting-juul.

FILED DATE: 5/14/2020 8:44 AM    2020CH04183

11.     Compounding the problem, JUUL also misrepresents and/or fails to disclose material information about its products.  For several years, JUUL failed to mention the word nicotine in its marketing despite the fact that JUUL pods have always contained a highly concentrated form of nicotine.  The company also deceptively represents that one of its pods contains the same amount of nicotine as one pack of traditional cigarettes, even though it knows consumers absorb the nicotine equivalent of up to two packs of traditional cigarettes.  In addition, JUUL misrepresents that its products are safe or less harmful than traditional cigarettes.  Recent studies have shown that e-cigarettes are linked to several health problems, including lung and heart diseases and cancer.  Further, JUUL misrepresents that its products can be used to quit smoking traditional cigarettes despite the fact that it lacks evidence to substantiate such a claim.

## PARTIES

12.     Plaintiff City of Chicago is a municipal corporation and a home-rule unit organized and existing under the laws of the State of Illinois.  The City's Corporation Counsel has the authority to "[a]ppear for and protect the rights and interests of the city in all actions, suits and proceedings brought by or against it or any city officer, board or department."  MCC § 2-60-020.  In addition, the BACP Commissioner requested the Corporation Counsel to bring this action and seek all available relief on her behalf.

13.     Defendant JUUL Labs, Inc. is a Delaware corporation with its principal place of business located at 560 20th Street, San Francisco, California 94107.  JUUL previously conducted business under the names PLOOM, Inc. and PAX Labs, Inc.

14.     Defendant Leah Mol, Inc., doing business as Rog Mobil ("Rog Mobil"), is an Illinois corporation with its principal place of business located at 7550 N. Sheridan Road, Chicago, Illinois, 60626.

FILED DATE: 5/14/2020 8:44 AM   2020CH04183

15.     Defendant 2550 Pulaski Business, Inc., doing business as Mobil ("Pulaski Mobil"), is an Illinois corporation with its principal place of business located at 2550 N. Pulaski Road, Chicago, Illinois, 60639.

16.     Defendant 4901 Central Inc., doing business as Mobil ("Central Mobil"), is an Illinois corporation with its principal place of business located at 4401-4411 North Central Avenue, Chicago, Illinois, 60630.

17.     Defendant T and M Gas, Inc., doing business as Shell ("T and M Shell"), is an Illinois corporation with its principal place of business located at 3159 West Addison Street, Chicago, Illinois, 60618.

18.     Defendant Irving Shell Gas and Food, Inc. ("Irving Shell") is an Illinois corporation with its principal place of business located at 6747 West Irving Park Road, Chicago, Illinois, 60634.

19.     Defendants Rog Mobil, Pulaski Mobil, Central Mobil, T and M Shell, and Irving Shell will be collectively referred to as the "Retailer Defendants."

## JURISDICTION

20.     The Court has subject-matter jurisdiction under Article VI, section 9 of the Illinois Constitution.

21.     The Court has personal jurisdiction over Defendants under 735 ILCS 5/2-209 because Defendants are corporations organized under the laws of this State and/or have conducted business in Illinois and have entered into contracts or made promises that are substantially connected to Illinois.

22.     Venue is proper under 735 ILCS 5/2-101 because part of the transactions underlying Chicago's claims occurred in Cook County.

FILED DATE: 5/14/2020 8:44 AM   2020CH04183

## GENERAL ALLEGATIONS

**I.    Eliminating Teen Tobacco Use Has Been An Important Public Policy For Decades**

23.    In 1998, the major tobacco companies entered into the MSA with 46 State Attorneys General, the District of Columbia and five U.S. Territories.  The MSA sought to reduce youth smoking in the United States by prohibiting the targeting of youth in traditional cigarette advertising.  Among other things, the MSA prohibited tobacco manufacturers from marketing tobacco products by using celebrity endorsements, billboard advertisements, branded merchandise, and certain product placements.

24.    In 2006, a court ruled that tobacco manufacturers had targeted youth in marketing tobacco products.  The court found that the manufacturers "exploit[ed] adolescents' vulnerability to imagery" and reduced ability to perceive the risks of nicotine addiction by, among other things, utilizing themes of "social inclusion," "sex appeal," and "being cool."  *United States v. Philip Morris USA, Inc.*, 449 F. Supp. 2d 1, 561-692 (D.D.C. 2006), *aff'd in part, vacated in part*, 566 F.3d 1095 (D.C. Cir. 2009).

25.    The City of Chicago also regulates e-cigarettes directly through the MCC, which provides: "No person shall sell, give away, barter, exchange or otherwise furnish any tobacco product or tobacco accessories at retail or otherwise to any individual under 21 years of age."  MCC § 4-64-345.  The MCC defines "tobacco product" as "any electronic cigarette as defined herein or component or part thereof or any product in leaf, flake, plug, liquid, or any other form, containing nicotine derived from tobacco, which product is intended to enable human consumption of the tobacco or nicotine, whether chewed, smoked, absorbed, dissolved, inhaled, snorted, sniffed, or ingested by any other means."  MCC § 4-64-100.  The MCC further defines an "Electronic cigarette" as "any electronically actuated device which in operation causes the

FILED DATE: 5/14/2020 8:44 AM   2020CH04183

user to exhale any smoke, vapor, or other substance other than those produced by unenhanced human exhalation." MCC § 7-32-010.

26.     The City has conducted numerous undercover retail stings, resulting in many citations to local retailers selling e-cigarettes—including JUUL products—to minors. It has also filed law enforcement action against dozens of e-cigarettes companies targeting and selling to youth online.

27.     This action stems from the City's year-long investigation of JUUL. The City issued a subpoena to JUUL in February of 2019, ordering JUUL to produce documents related to JUUL's product design, marketing, and sales to minors, and, to date, has reviewed tens of thousands of documents.

## II.     Youth E-Cigarette Use Is Unsafe

28.     According to the Surgeon General, youth e-cigarette use (a) may cause an addiction to the nicotine typically contained in e-liquids, (b) "may have lasting deleterious consequences for brain development," (c) "can expose users to several chemicals . . . known to have adverse health effects," and (d) is associated with higher use of traditional cigarettes later in life.[13]

### A.     Youth Are At High Risk For Developing Nicotine Addiction

29.     JUUL pods have a highly concentrated nicotine formulation that is extremely addictive. Since as early as 1988, the Surgeon General has warned that "[n]icotine is a psychoactive drug with actions that reinforce the use of tobacco . . . and that causes addiction."[14]

---

[13] *Supra* note 8.
[14] U.S. Department of Health and Human Services, *The Health Consequences of Smoking – Nicotine Addiction: A Report of the Surgeon General*, i, 9 (1988), https://collections.nlm.nih.gov/ext/document/101584932X423/PDF/101584932X423.pdf.

FILED DATE: 5/14/2020 8:44 AM   2020CH04183

The Surgeon General also concluded, "the pharmacologic and behavioral processes that determine tobacco addiction are similar to those that determine addiction to drugs such as heroin and cocaine."

30.     A recent study found that JUUL's nicotine formulation and addictive profile is nearly identical to a Marlboro cigarette and called JUUL the "e-cigarette analog of Marlboro."[15] James Pankow, one of the authors of the study, said, "Juul is all the things about Marlboro that are addictive.  Then they take away the bad smell and add some flavors.  It's a much more pleasant experience."[16]

31.     Youth are particularly vulnerable to nicotine addiction.  The adolescent brain is designed to create memories and learn skills faster than an adult brain.  Unfortunately, this means young people can "learn" addiction more easily than adults.  Nicotine can also prime the adolescent brain for addiction to other drugs, such as cocaine.[17]

32.     The risk of addiction is particularly problematic since experts are unsure of the best way to help teenagers addicted to nicotine.  Many young people do not have the discipline, patience, or willingness to follow necessary treatment plans.

---

[15] Anna K. Duell et al., *Nicotine in tobacco product aerosols: "It's déjà vu all over again,"* Tobacco Control 7 (Dec. 17, 2019), https://tobaccocontrol.bmj.com/content/tobaccocontrol/early/2019/12/16/tobaccocontrol-2019-055275.full.pdf.
[16] Chris Kirkham, *Addictive nicotine in JUUL nearly identical to a Marlboro: study*, Reuters (Dec. 17, 2019), https://www.reuters.com/article/us-juul-ecigarettes-study/addictive-nicotine-in-juul-nearly-identical-to-a-marlboro-study-idUSKBN1YL26R.
[17] U.S. Department of Health and Human Services, *Know the Risks: E-Cigarettes & Young People*, https://e-cigarettes.surgeongeneral.gov/knowtherisks.html (last visited Mar. 25, 2020).

FILED DATE: 5/14/2020 8:44 AM   2020CH04183

**B.      Nicotine Can Seriously Harm Adolescent Brains**

33.      Adolescents are also at risk for long-term, long-lasting effects of exposing their developing brains to nicotine.[18]  In addition to addiction, these risks include mood disorders and permanent lowering of impulse control.  Nicotine can also harm the parts of the brain that control attention and learning and may lead to attention deficit hyperactivity disorder.

34.      The director of Harvard Medical School's Adolescent Substance Use and Addiction Program, Dr. Sharon Levy, has seen and heard about the effects of e-cigarette use on kids in school.[19]  She said, "We've had kids who come in and say that they can't concentrate in school, that they need to leave the classroom, they need to sneak out to the bathroom so that they can hit their JUUL, or that they need to go to the nurse's office because they just need to lie down."

**C.      E-Cigarettes Expose Youth To Other Hazardous Chemicals And Health Risks**

35.      The Surgeon General warned: "E-cigarettes can expose users to several chemicals, including nicotine, carbonyl compounds, and volatile organic compounds, known to have adverse health effects."[20]  The Surgeon General also cautioned that the health effects of e-cigarette use were "not completely understood."

36.      Recent studies have shown that e-cigarettes may be related to a whole host of health issues.  One study shows that e-cigarettes may be just as harmful to the heart, if not more,

---

[18] *Id.*
[19] Maggie Fox and Lauren Dunn, *Vaping first sent this teen to the ER, then into rehab*, Today (Jan. 18, 2019), https://www.today.com/health/vaping-first-sent-teen-er-then-rehab-was-juul-blame-t147084.
[20] *Supra* note 8, at 7.

FILED DATE: 5/14/2020 8:44 AM   2020CH04183

than traditional cigarettes.[21]  Other studies have found a possible link between e-cigarette use and

lung and bladder cancer[22] and even DNA damage.[23]

37.     In December of 2019, the American Journal of Preventative Medicine published

the first long-term study of e-cigarette use.[24]  The three year study concluded that e-cigarette

users were about 30% more likely than nonusers to have developed a chronic lung disease, like

asthma or emphysema.

38.     In addition, the FDA announced in August of 2019 that it is investigating 127

reports of seizures or other neurological symptoms potentially connected to e-cigarettes.[25]

39.     The Centers for Disease Control and Prevention have received reports of 2,807

hospitalizations and sixty-eight deaths related to e-cigarette or vaping product use associated

lung injury (known as "EVALI") as of February 18, 2020.[26]  A significant number of these

EVALI patients are minors and some are as young as 13.  Teens as young as 15 have died from

---

[21] Mohamad Rashid et al., *Chronic E-cigarette Users Demonstrate More Persistent Coronary Endothelial Dysfunction Than Chronic Combustible Cigarette Users*, 140 Circulation (Supplement 1) A14980 (2019).

[22] MS Tang et al., *Electronic-cigarette smoke induces lung adenocarcinoma and bladder urothelial hyperplasia in mice*, 116 Proc. Nat'l Acad. Sci. USA 21727, 21728-9 (2019).

[23] Hyun-Wook Lee et al., *E-cigarette smoke damages DNA and reduces repair activity in mouse lung, heart, and as well as in human lung and bladder cells*, PNAS E1561-4 (Jan. 29, 2018), https://www.pnas.org/content/pnas/115/7/E1560.full.pdf.

[24] Dharma N. Bhatta, et al., *Association of E-Cigarette Use With Respiratory Disease Among Adults: A Longitudinal Analysis*, 58 Am. J. Prev. Med. 182, 184-6 (2019).

[25] U.S. Food and Drug Administration, *FDA In Brief: FDA encourages continued submission of reports related to seizures following e-cigarette use as part of agency's ongoing scientific investigation of potential safety issue* (Aug. 7, 2019), https://www.fda.gov/news-events/fda-brief/fda-brief-fda-encourages-continued-submission-reports-related-seizures-following-e-cigarette-use.

[26] Centers for Disease Control and Prevention, *Outbreak of Lung Injury Associated with the Use of E-Cigarette, or Vaping, Products*, https://www.cdc.gov/tobacco/basic_information/e-cigarettes/severe-lung-disease.html (last updated Feb. 25, 2020).

FILED DATE: 5/14/2020 8:44 AM   2020CH04183

EVALI.[27]  As of January 16, 2020, the Illinois Department of Public Health has reported 218 cases of EVALI—the bulk of which are in and around Chicago—and 5 deaths.[28]  Half of Illinois EVALI patients are 22 years of age or less.  Although a majority of EVALI patients have reported using THC-containing products, 57% reported using nicotine-containing products and 14% reported exclusively using nicotine-containing products.[29]

40.      During the first three years that JUUL products were on the market, JUUL received more than 2,500 complaints about adverse health effects, including reports of burning sensations in the lungs, blistered lips, and vomiting.

**D.      E-Cigarettes Can Be A Gateway To Traditional Tobacco Products**

41.      Mounting evidence confirms that, although some manufacturers have marketed e-cigarettes as a smoking-cessation product, youth use of e-cigarettes *increases* the likelihood that non-smokers will begin smoking traditional cigarettes.  Studies have found that while 40% of young e-cigarette users had never smoked traditional cigarettes before trying e-cigarettes,[30] 31% of teen e-cigarette users started smoking cigarettes within just six months.[31]  Ironically, teens considered "low risk" for smoking are nearly nine times more likely to smoke traditional

---

[27] Sanyra Mansoor, *15-Year-Old Texas Teen's Death Is Nation's Youngest Vaping-Related Fatality in Current Outbreak*, Time (Jan. 12, 2020), https://time.com/5763506/texas-teen-vaping-death/.
[28] *Supra* note 6.
[29] *Supra* note 26.
[30] Center for Disease Control and Prevention, *QuickStats: Cigarette Smoking Status Among Current Adult E-cigarette Users, by Age Group – National Health Interview Survey, United States, 2015* (Oct. 28, 2016), https://www.cdc.gov/mmwr/volumes/65/wr/mm6542a7.htm.
[31] National Institutes of Health, *Teens and E-cigarettes*, https://www.drugabuse.gov/related-topics/trends-statistics/infographics/teens-e-cigarettes (last updated Feb. 2016).

FILED DATE: 5/14/2020 8:44 AM   2020CH04183

cigarettes after using e-cigarettes.[32]  To make matters worse, studies have also found that youth e-cigarette use doubles the likelihood of marijuana consumption.[33]

## III.    JUUL Aggressively Targeted Youth

42.    JUUL targeted youth by designing a trendy and easily-concealable device and a candy-flavored nicotine formulation that is less harsh for non-nicotine users.  JUUL's marketing was youth-centric.  It featured attractive young, trendy people having fun while using JUUL and relied heavily on social media.  JUUL also hosted launch parties and sampling events to recruit trendy influencers to popularize its products.

43.    JUUL mimicked the playbook that Big Tobacco used to market traditional cigarettes to underage consumers in the decades preceding the ban placed on Big Tobacco's youth-marketing practices under the MSA.  JUUL founders James Monsees and Adam Bowen studied publicly available tobacco industry documents to develop JUUL's marketing plan, because, as Monsees said: "The cigarette is probably the most successful consumer product of all time."[34]

44.    It is well-known that Big Tobacco deliberately targeted youth because of the enormous possibilities for profit.  Nearly 9 out of 10 smokers started smoking by age 18, and 99% started by age 26.  Because youth are more susceptible to nicotine addiction, they are also

---

[32] Kaitlyn M. Berry et al, *Association of Electronic Cigarette Use With Subsequent Initiation of Tobacco Cigarettes in US Youths*, JAMA Network Open (Feb. 1, 2019), https://jamanetwork.com/journals/jamanetworkopen/fullarticle/2723425.

[33] Katrina F. Trivers et al., *Prevalence of Cannabis Use in Electronic Cigarettes Among US Youth*, 172 JAMA Pediatr. 1097, 1097-8 (2018).

[34] Gabriel Montoya, *PAX LABS: Origins with James Monsees*, Social Underground, https://socialunderground.com/2015/01/pax-ploom-origins-future-james-monsees/ (last visited Mar. 25, 2020).

FILED DATE: 5/14/2020 8:44 AM   2020CH04183

likely to become long-term customers.  About three out of every four teen smokers ended up smoking into adulthood.[35]

45.     A former JUUL manager disclosed to Reuters that JUUL leaders knew that young customers were "the most profitable segment in the history of the tobacco industry" because nicotine users who start as teens are the most likely to become lifelong users.  The former manager said, "Clearly, people internally had an issue with it.  But a lot of people had no problem with 500 percent year-over-year growth."[36]

**A.     JUUL Designed Its Products To Appeal To Underage Users**

46.     JUUL intentionally designed its products to appeal to the underage market.  The JUUL device, with its sleek, trendy design and resemblance to a USB flash drive, blends in with most teens' gadgets, making it easy to conceal from parents and teachers.

47.     The JUUL pod formulation is uniquely appealing to teens because it is less harsh and therefore ideal for an inexperienced user.  JUUL's founders worked extensively on the formulation to create the optimal blend of smoothness and potency – knowing it had to hook users with the first puff.

48.     JUUL clearly intended for first-time nicotine users to use its products.  JUUL inserted a "Getting Started" guide (excerpt reprinted below) in its packaging to help consumers get "used to" its products.  JUUL tells users, "If it feels too harsh, try inhaling less and puffing more gently.  Don't give up, you'll find your perfect puff."

---

[35] *Supra* note 9.
[36] Chris Kirkham, *JUUL disregarded early evidence it was hooking teens*, Reuters (Nov. 5, 2019), https://www.reuters.com/investigates/special-report/juul-ecigarette/.

FILED DATE: 5/14/2020 8:44 AM    2020CH04183

> 3. First, take small puffs to get a feel for the vapor, then ease into inhaling. Like any new experience, JUUL may take getting used to. If **it feels too harsh, try inhaling less and puffing more gently.** Don't give up, you'll find your perfect puff.

**B.      JUUL Marketed Youth-Friendly Flavors**

49.      Until late 2019, JUUL sold its pods in several youth-friendly flavors, such as crème brulee, fruit medley, cool cucumber, mango, and cool mint and prominently featured these flavors in its nationwide advertising, as shown in the examples below, which, upon information and belief, appeared in Chicago.  It also offered limited edition flavors, such as coco mint (a mix of chocolate and mint).  JUUL slightly changed its flavor names in the summer of 2018 to make them sound less like candy but continued to keep them on the market.  For example, it changed crème brulee to crème and fruit medley to fruit.

50.      JUUL registered, but did not sell, several other flavors with the FDA, including peanut and jam, apple crumble, apple cran, peach ginger tea, chestnut croissant, mimosa, strawberry limoncello, cinnamon snap, lemon poppyseed and spicy watermelon – all flavors that would clearly appeal to youth.[37]

---

[37] Robert K. Jackler et al., *JUUL Advertising Over its First Three Years on the Market*, Stanford Research into the Impact of Tobacco Advertising 11 (Jan. 31, 2019), http://tobacco.stanford.edu/tobacco_main/publications/JUUL_Marketing_Stanford.pdf.

FILED DATE: 5/14/2020 8:44 AM   2020CH04183



*JUUL's Facebook posts from January 19, 2017 and December 19, 2017, respectively*

51.     JUUL's use of youth-friendly flavors was designed to induce underage use, and it worked.  Nationally, more than eight out of every 10 kids, aged 12-17 years old who use e-cigarettes use flavored e-cigarettes.[38]  A Truth Initiative survey found that among the youngest JUUL users, aged 12-17 years, 26% preferred fruit, 25% preferred mango, and 16% preferred mint.[39]

52.     Flavors are a significant part of JUUL's business.  In an internal marketing document, ███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████

---

[38] *Supra* note 6.
[39] Truth Initiative, *JUUL fails to remove all of youth's favorite flavors from stores* (Nov. 15, 2018), https://truthinitiative.org/research-resources/emerging-tobacco-products/juul-fails-remove-all-youths-favorite-flavors-stores.

FILED DATE: 5/14/2020 8:44 AM   2020CH04183

██████████████████████████████████████████████████

████████████████████████████████████.

53.     Big Tobacco also used flavor-themed marketing to characterize its product as a special treat rather than an addictive drug.  *See* below for a comparison of flavor-based advertising from Big Tobacco and JUUL.[40]




### C.     JUUL's Marketing Showed Young, Trendy People Having Fun

54.     On June 1, 2015, JUUL launched its device with a multimillion-dollar nationwide "Vaporized" advertising campaign, which ran until early 2016 and, upon information and belief, appeared in Chicago.  JUUL's Vaporized campaign began with a 12-panel billboard display in

---

[40] Stanford University, *Stanford University Research Into the Impact of Tobacco Advertising – JUUL*,
http://tobacco.stanford.edu/tobacco_main/subtheme_pods.php?token=fm_pods_mt068.php (last visited Mar. 25, 2020).

FILED DATE: 5/14/2020 8:44 AM   2020CH04183

Times Square and an advertising spread in *Vice* magazine – the "#1 youth media in the world." JUUL used bright and colorful print advertisements and prominently featured young models dressed like high schoolers and college students.  JUUL's chief marketing officer, Richard Mumby, said, "while other campaigns tend to be 'overtly reliant on just the product,' [JUUL's] effort features diverse 20-to-30-year-olds using the product."[41]

55.     JUUL engaged outside advertising firms known to create youth-oriented campaigns.  For example, one of the designers of JUUL's Vaporized campaign, Cult Collective (a company with the tagline "convert your customers into cult-like followers"), stated its goal was to create "a brand sponsorship strategy that aligned perfectly with those we knew would be our best customers."[42]

56.     Stanford researchers who studied JUUL's marketing concluded: "The targeting of youthful consumers was evident in the design and implementation of the vaporized campaign."[43] *See* examples of JUUL's vaporized campaign below.[44]  The researchers commented that the young models appeared "trendy in casual dress" and "[t]heir poses were often evocative of behaviors more characteristic of underage teens than mature adults."[45]

---

[41] Declan Harty, *JUUL Hopes to Reinvent E-Cigarette Ads With 'Vaporized' Campaign*, AdAge (June 23, 2015), http://adage.com/article/cmo-strategy/juul-hopes-reinvent-e-cigarette-ads-campaign/299142/.
[42] Cult Collective, www.cultideas.com (last visited Mar. 25, 2020).
[43] *Supra* note 37, at 7.
[44] *Supra* note 40.
[45] *Supra* note 37, at 7.

FILED DATE: 5/14/2020 8:44 AM    2020CH04183





*2015 Vaporized Ads*

57.    Placed side by side, the images, themes, and tactics of JUUL's marketing bear an unmistakable resemblance to Big Tobacco's marketing of traditional cigarettes. *See* comparison of Big Tobacco's traditional cigarette advertisements and JUUL advertisements below.[46]  Both sets of advertising include attractive men and women, playful images, and groups of friends socializing to give the overall impression that the products are cool and trendy.

---

[46] Stanford University, *Stanford University Research Into the Impact of Tobacco Advertising – Cigs vs eCigs JUUL*, http://tobacco.stanford.edu/tobacco_main/images-comp.php?token2=fm_tn_st328.php&token1=fm_tn_img10799.php&theme_file=fm_tn_mt035.php&theme_name=Cigs%20vs.%20eCigs&subtheme_name=Cigs%20vs%20eCigs%20JUUL (last visited Mar. 25, 2020).

FILED DATE: 5/14/2020 8:44 AM   2020CH04183









FILED DATE: 5/14/2020 8:44 AM 2020CH04183

 

58.     JUUL's targeting of youth was wildly successful. ███████████
██████████████████████████████████████████████████████████
█████████████████████████.

59.     In 2018, when JUUL was desperately trying to deflect criticism of its advertising,

the company noticeably switched its focus to adult smokers.  JUUL tried to spin its rebranding as

a "mission" to rid the world of traditional cigarettes and a stance against teen use of its products.

But, it was just another marketing ploy, this time to differentiate JUUL from its competitors, win

over a previously untapped market, and appease regulators.  JUUL knew that continuing to target

a young audience was an unnecessary risk.  JUUL's internal marketing documents note JUUL

was already "████████████████████████████████████████████████

█████████."

60.     JUUL's rebranded advertising ████████████████████████████████
██████████████████████████████████████████████████████████████

23

██████████████████████████████████████

██████████████████████████████████████

██████████████████.

**D.     JUUL Used Social Media To Reach Youth**

61.     Although JUUL engaged in some traditional advertising, such as television and print, its main focus was on social media.  JUUL's digital media strategy was "███████████ ████████████████████████████████."  During JUUL's launch in 2015 until around November of 2018, JUUL had official accounts on most social media platforms, including Instagram, Facebook, and Twitter—all of which are popular with teens.  As of November 2018, JUUL had 77,600 followers on Instagram, 19,700 on Twitter, and 10,280 on Facebook.[47]  JUUL's official accounts tweeted at least 2,691 times on Twitter and posted around 4,000 times collectively to Instagram and Facebook.

62.     According to a 2018 study, JUUL was one of the first e-cigarette companies to rely heavily on social media.[48]  In 2017, JUUL-related tweets surged to more than 17 times the 2016 levels.  The study found JUUL's retail sales grew with its increased relevance on Twitter.  Significantly, a JAMA Pediatrics study found that the majority of people following JUUL's Twitter account were younger than the legal age to buy e-cigarettes.[49]

63.     JUUL expanded its reach on social media by creating JUUL hashtags.  Teens have extensively used JUUL's hashtags, including its most popular hashtag (#juul), to post pictures of

---

[47] *Supra* note 37, at 19.

[48] Jidong Huang, *Vaping versus JUULing: how the extraordinary growth and marketing of JUUL transformed the US retail e-cigarette market*, 28 Tobacco Control 146, 148-9 (2019) (first published online 2018).

[49] Annice E. Kim, *Estimated Ages of JUUL Twitter Followers*, 173 JAMA Pediatr. 690, 691 (2019).

FILED DATE: 5/14/2020 8:44 AM   2020CH04183

FILED DATE: 5/14/2020 8:44 AM  2020CH04183

themselves juuling and share humorous memes related to JUUL, which increases JUUL's visibility among youth. *See* examples of users' Twitter posts below.[50]  In November of 2018, then-JUUL CEO Kevin Burns admitted, "There is no question that . . . user-generated social media content is linked to the appeal of vaping to underage users."[51]  As of January 21, 2019, #juul appeared in 336,308 posts on Instagram.[52]  In the 27 days between October 17, 2018 and November 12, 2018, #juul appeared in 23,676 Instagram posts – or an average of 877 posts per day.

 

*2018 Instagram posts that contain #juul*

64.     JUUL appealed to youth in social media posts by associating its products with sophisticated trendy products, like iPhones, and showing celebrities popular with young

---

[50] *Supra* note 40.
[51] Jennifer Maloney, *Juul Says It Will Quit Social Media*, Wall St. J. (Nov. 13, 2018), https://www.wsj.com/articles/juul-says-it-will-quit-social-media-1542135824.
[52] *Supra* note 37, at 23.

FILED DATE: 5/14/2020 8:44 AM   2020CH04183

audiences, like Katy Perry and Orlando Bloom, using JUUL.  *See* examples of JUUL's Facebook posts below.[53]

 

*JUUL's Facebook posts from January 12, 2016 and January 12, 2018, respectively*

65.    Big Tobacco also relied on celebrity endorsements to advertise its products.  *See* the comparison below showing Big Tobacco's advertisement featuring Lucille Ball and JUUL's Facebook post with Katy Perry.[54]

---

[53] *Supra* note 40.
[54] *Id.*

FILED DATE: 5/14/2020 8:44 AM   2020CH04183

 

66.     JUUL ran a social media influencer campaign in which JUUL paid social media users with large, youthful audiences to post about its products to raise brand awareness and inspire sales.[55]  The campaign aided JUUL in its goal of using "███████████ ██████████████████████████████████████████ [.]"  JUUL's influencers earned approximately $1,000 for each 100,000 followers.  One influencer said JUUL selected her because, "They liked my edgy style and that I appealed to the younger market."[56]  She revealed that JUUL paid $1,000 for one blog post and one Instagram post.  One of the influencer's Instagram posts reached more than 4,500 people and garnered approximately 1,500 likes.  Another influencer with 120,000 subscribers posted a JUUL "unboxing" video to YouTube, garnering 52,000 views.[57]

67.     JUUL also used social media to interact with Chicago residents and make sure

---

[55] *Supra* note 37, at 19.
[56] Michael Nedelman et al, *#JUUL: How social media hyped nicotine for a new generation*, CNN (Dec. 19, 2018), https://www.cnn.com/2018/12/17/health/juul-social-media-influencers/index.html.
[57] *Supra* note 37, at 19-20.

FILED DATE: 5/14/2020 8:44 AM   2020CH04183

they were able to find JUUL pods at local retail outlets.  *See* sample Twitter posts below.[58]





*JUUL's Twitter Posts from July 2, 2015 and October 26, 2015, respectively*

68.    JUUL also re-posted Chicago-themed promotional materials from a local retailer.

*See* sample Twitter post below.[59]

---

[58] JUUL Labs (@JUULvapor), Twitter (Oct. 26, 2015, 1:02 PM),
https://twitter.com/JUULvapor/status/658690278539313156; JUUL Labs (@JUULVapor),
Twitter (July 2, 2015, 2:36 PM), https://twitter.com/JUULvapor/status/616676958148104194.
[59] *Supra* note 40.

FILED DATE: 5/14/2020 8:44 AM    2020CH04183



*JUUL's September 28, 2017 Instagram post*

69.     JUUL's social media posts falsely represented that JUUL products are harmless, fun, and trendy rather than hazardous and addictive.  A common theme in JUUL's social media posts is young, trendy people having fun while using JUUL.  *See* sample Twitter posts below.[60]




*JUUL's Twitter posts from June 4, 2015*

---

[60] *Supra* note 40.

29

FILED DATE: 5/14/2020 8:44 AM   2020CH04183

70.     JUUL was well aware in 2015 that its marketing campaign appealed to minors and realized shortly after the product launched that teens were buying JUUL products, because they were posting pictures of themselves using JUUL on social media.

71.     In November of 2018, after extensive criticism, JUUL deleted all of its social media accounts.  But the damage cannot be undone.  JUUL's online presence now has a life of its own due to JUUL's extensive social media push at launch.  JUUL said that 99% of social media posts that reference JUUL are created by people with no link to the company, including teens, making JUUL's deletion of its social media accounts ineffectual and insignificant.[61]

**E.     JUUL Hosted Youth-Oriented Launch Events**

72.     JUUL hosted several launch parties and sampling events in major U.S. cities around the time of JUUL's launch and its first year on the market.  These events were youth-oriented and usually themed around music or cinema.  *See* examples of invitations to launch events below.[62]

---

[61] Erin Brodwin, *Silicon Valley's favorite e-cig company shut down its social media accounts – but JUUL's advertising now has a life of its own*, Business Insider (Nov. 17, 2018), https://www.businessinsider.com/why-juul-shut-down-social-media-facebook-instagram-vaping-2018-11.
[62] *Supra* note 40.

FILED DATE: 5/14/2020 8:44 AM    2020CH04183

 

73.    One of JUUL's goals was to ███████████████████ ████████ in an effort to broaden the market for mass distribution.  In Chicago, JUUL co-hosted a launch event on July 30, 2015 with an "upscale menswear and lifestyle boutique" in the West Loop.  The trendy event featured a live DJ and offered free engraving for JUUL device purchases. *See* a picture of the Chicago launch event below.[63]



---

[63] Nicola Fumo, *Pax Has Brilliantly Positioned itself As Fashion's Vaporizer*, Racked (Oct. 13, 2015), https://www.racked.com/2015/10/13/9514363/pax-vaporizer.

FILED DATE: 5/14/2020 8:44 AM   2020CH04183

74.     The primary purpose of JUUL's events was to get JUUL products into the hands of young, trendy influencers with the hope that they would popularize the products among their peers.  JUUL hired attractive, young people to distribute samples at events and provided them with detailed instructions on how to dress and present themselves.  *See* JUUL's "toolkit" below that provides instructions for advertisers.[64]  JUUL required advertisers to wear "fitted" jeans and a JUUL-branded shirt and bag.  JUUL also told advertisers to bring an iPhone and use a JUUL-branded iPhone case.



---

[64] *Supra* note 40.

FILED DATE: 5/14/2020 8:44 AM   2020CH04183

**IV.   Defendants Failed To Restrict Adequately JUUL Sales To Consumers Of Legal Age**

    **A.   JUUL's Lax Procedures Resulted In Significant Sales To Minors**

75.   JUUL allowed minors to access its products by failing to implement an adequate age-verification system for online sales, address loopholes in its warranty and auto-shipment programs, and adequately oversee retailers.

    **1.   JUUL's Online Age-Verification System Is Flawed**

76.   JUUL claims that it only sells its products to age-verified consumers, however, JUUL knows there are several flaws in its age-verification processes.  JUUL uses a third party vendor, Veratad, to verify age for online sales, yet JUUL does not require that the information consumers enter completely match the information provided by Veratad—creating a gap in the process.

77.   JUUL also gives consumers multiple attempts to verify their age and does not restrict consumers from submitting completely different information in each attempt.  Even when consumers fail the age verification process, JUUL continues to market to those underage consumers using the email addresses provided during the age verification process.

78.   JUUL began making changes to its age verification process in November 2018, more than three years after JUUL launched its products.  This means that JUUL had at least three years to target underage users with minimal protections in place to prevent underage sales.

79.   When JUUL launched, its so-called "industry-leading" age-verification process through Veratad was programmed to determine whether the potential purchaser's data met four "rules."  Based on those criteria, Veratad would then return a report to JUUL stating that the customer had met age verification standards.  Those four rules were: (1) person found in public

FILED DATE: 5/14/2020 8:44 AM   2020CH04183

data sources; (2) person is alive; (3) person meets minimum age requirement; and (4) person has supplied an accurate year of birth.

80.     In determining whether the purchasing consumer was found in public data sources, Veratad did not always analyze the consumer's name, full address, and date of birth to confirm their identity.  In fact, Veratad used only portions of the address provided by comparing first name, last name, date of birth, zip code, or house number.  For some consumers, Veratad did not consider the address at all and just accepted the person's first name, last name, and last four digits of their social security number—something that would be easy for underage purchasers to fake.

81.     At some point after its launch, JUUL required an adult signature upon delivery of its online tobacco products.  However, in October 2016, JUUL terminated that requirement and instead made the signature of an adult buyer optional—for an additional fee.  This step actively discouraged buyers from confirming their age before purchasing JUUL products.

82.     While JUUL claims that it has tightened its age verification processes within the last year, as of at least December 2017, JUUL did not have any systems in place to prevent an underage individual who had been blocked by age verification from simply creating a new account with a different email and/or phone number.

### 2.     JUUL's System Contained Too Many Loopholes

83.     Upon information and belief, JUUL knew that large internet orders (10 or more JUUL devices) were likely placed in order to resell to teens.  But JUUL failed to prohibit bulk purchases until late 2018.

84.     JUUL's warranty program allowed underage users to easily obtain free JUUL products directly from JUUL.  All an underage user needed to do was to provide a serial number

FILED DATE: 5/14/2020 8:44 AM 2020CH04183

from an existing JUUL device and submit that number along with a name and date of birth of anyone of legal age.

85.     JUUL knew underage consumers were likely obtaining JUUL devices through its lax warranty program.  In October of 2017, JUUL's Customer Service Team Lead reported that one customer had redeemed over 300 JUUL device warranties in just over a month.

86.     Similarly, JUUL's Auto-Ship Program only required age verification at the time of enrollment.  Thus, when JUUL changed its policy to only sell to consumers 21 years and older, it continued to ship JUUL products to underage consumers enrolled in the Auto-Ship Program because they were already deemed to be age-verified.

### 3.     JUUL Failed to Adequately Oversee Retailers

87.     JUUL products are sold in over 100,000 stores nationwide, including many gas stations (like the Retailer Defendants) and convenience stores.  Retail purchases are a major source of youth sales.  The Truth Initiative found that nearly three quarters of teens purchase JUUL products from brick and mortar stores.[65]  Between April and June of 2018, the FDA issued warning letters and civil penalties to several JUUL retailers in an effort to crack down on underage JUUL use.[66]  In addition, Chicago has cited many local retailers for selling e-cigarette products to minors.

88.     Until recently, JUUL has done very little to monitor retail locations.  In August of 2019, several years after JUUL knew it had a serious problem with underage sales, JUUL implemented a Retail Access Control Standards (RACS) program for retailers.  The program

---

[65] *Supra* note 12.
[66] U.S. Food and Drug Administration, Warning Letters and Civil Money Penalties Issued to Retailers for Selling JUUL and Oher E-Cigarettes to Minors, https://www.fda.gov/tobacco-products/ctp-newsroom/warning-letters-and-civil-money-penalties-issued-retailers-selling-juul-and-other-e-cigarettes (last updated Sept. 12, 2018).

restricts the amount of product that can be purchased in a single transaction to one device and four refill kits. It also requires retailers to electronically scan a valid, of-age government-issued identification to verify both the age and the validity of the identification.

89. Pre-RACS, JUUL found its retailers had an age-verification failure rate of 36.8% and a bulk purchase failure rate of 29.3%. The failure rate for both age-verification and bulk purchases significantly decreased with RACS, showing JUUL could have taken early steps to curb underage sales. JUUL's new system, however, still has loopholes. For example, JUUL found in some transactions, retail clerks scanned their identification on behalf of consumers or allowed back-to-back transactions to circumvent the bulk purchase restriction.

90. JUUL also claims it recently enhanced its secret shop program to monitor retailer compliance. Prior to November 2018, however, JUUL only visited around 6% of retail locations. Even JUUL's "Secret Shopper Program Enhancement" purportedly only temporarily revokes a retailer's license if the retailer is cited *three times within the same year*.

### B. The Retailer Defendants Sold JUUL Products To Underage Consumers

91. The Retailer Defendants engaged in inadequate age verification and sold JUUL products people under the age of 21. To confirm that people under the age of 21 can purchase JUUL products from the Retailer Defendants' physical retail locations, BACP's Business Compliance Investigations Unit retained two youths, John Doe #1 (age 17) and John Doe #2 (age 19), from a non-profit partner organization to purchase JUUL pods from the Retailer Defendants under the supervision of a BACP investigator.

92. On February 3, 2020, John Doe #1 purchased a package of four menthol flavored JUUL pods from Central Mobil for $20.65. John Doe #1 initially approached a Central Mobil

FILED DATE: 5/14/2020 8:44 AM   2020CH04183

FILED DATE: 5/14/2020 8:44 AM   2020CH04183

employee and requested JUUL pods, which Central Mobil stored on the back wall. The employee then sold John Doe #1 the JUUL products without asking for his age or identification.

93.     On February 3, 2020, John Doe #1 purchased a package of four menthol flavored JUUL pods from T and M Shell for $22. John Doe #1 initially approached a T and M Shell employee and requested JUUL pods, which T and M Shell stored behind the counter. The employee sold John Doe #1 the JUUL products without asking his age or identification.

94.     On February 3, 2020, John Doe #1 purchased a package of four menthol flavored JUUL pods from Irving Shell for $22. An Irving Shell employee asked John Doe #1 for identification but sold him the JUUL pods before he could respond.

95.     On February 5, 2020, John Doe #1 purchased a package of four mint flavored JUUL pods from Rog Mobil for $38.80. When John Doe #1 requested the JUUL pods, a Rog Mobil employee gestured for John Doe #1 to wait seemingly until another customer, who was actually a BACP investigator, left the store. Once the BACP investigator exited, the Rog Mobil employee asked John Doe #1 for his age. John Doe #1 truthfully responded that he was 17 years of age. The employee then sold John Doe #1 the JUUL products despite knowing he was a minor.

96.     On February 6, 2020, John Doe #2 purchased a package of four menthol flavored JUUL pods from Pulaski Mobil for $20. A Pulaski Mobil employee asked John Doe #2 for his age. John Doe #2 truthfully responded that he was 19 years of age. The employee then sold John Doe #2 the JUUL products despite knowing he was under 21 years of age.

## V.     JUUL Misrepresents And/Or Fails To Disclose Material Information About Its Products

97.     JUUL deceptively markets its products by misrepresenting and/or failing to disclose material information about the nicotine contents of its products. At times, JUUL has

FILED DATE: 5/14/2020 8:44 AM   2020CH04183

failed to mention that its products contain nicotine at all and at other times misrepresented the nicotine equivalency between a JUUL pod and a pack of traditional cigarettes.  Further, JUUL misrepresents its nicotine content in comparison to other e-cigarettes.  JUUL also misrepresents that its products are safer or less harmful than traditional cigarettes and effective for smoking cessation.

### A.    JUUL Deceptively Represents The Nicotine Contents Of Its Pods

98.    From JUUL's launch in 2015 until around April of 2016, JUUL failed to disclose that JUUL pods contained nicotine despite the fact that JUUL pods have always contained a highly concentrated nicotine formulation.  *See* examples of JUUL's early advertisements below.[67] In fact, a single JUUL pod contains 59-66 mg/ml of nicotine – an enormous amount of nicotine. For reference, the European Union prohibits e-cigarette liquids in excess of 20 mg/ml.



---

[67] *Supra* note 40.

FILED DATE: 5/14/2020 8:44 AM   2020CH04183



*2015 JUUL Ads*

99.     Beginning in 2017, JUUL placed a small, difficult-to-read nicotine warning at the bottom of its social media posts—a far cry from the black-box warning that JUUL started using around 2018.  *See* examples of JUUL's Facebook posts from 2017 and 2018 below.[68]




*JUUL's Facebook posts from October 30, 2017 and July 31, 2018, respectively*

---

[68] *Supra* note 40.

FILED DATE: 5/14/2020 8:44 AM   2020CH04183

100.    The Truth Initiative found that 63% of young JUUL users did not know that the product always contained nicotine.[69]  A survey of 45,500 conducted by the University of Michigan also found that the majority of youth e-cigarette users think they are vaping only flavoring, not nicotine.[70]  Similarly, almost 40% of 10th and 12th grade youth in Illinois believe there is low or no risk of negative health effects related to e-cigarettes.[71]

101.    JUUL also deceptively markets that its pods are 5% nicotine strength.  *See* a screenshot from JUUL's website below.[72]  JUUL, however, measures nicotine by weight (mg/mg) rather than volume (mg/ml), which is the industry standard.  JUUL does not clearly and conspicuously disclose that it measures nicotine concentration differently than its competitors, which causes confusion and makes it difficult for consumers to compare nicotine strength across different products.  If JUUL measured by volume, like other e-cigarette manufacturers, its pods would have a nicotine concentration of approximately 6%—much higher than most of its competitors.[73]

---

[69] Truth Initiative, *Data suggest teens who use JUUL are not just experimenting* (Nov. 1, 2018), https://truthinitiative.org/news/data-suggest-teens-who-use-juul-are-not-just-experimenting.
[70] Lloyd D. Johnston, *National Survey Results on Drug Use: 2016 Overview – Key Findings on Adolescent Drug Use*, 8 (Jan. 2017), http://www.monitoringthefuture.org/pubs/monographs/mtf-overview2016.pdf.
[71] *Supra* note 6.
[72] JUUL, https://www.juul.com/shop/pods/menthol-5-percent (last visited Dec. 18, 2019).
[73] Robert Jackler, *5 Questions: Robert Jackler says JUUL spurs 'nicotine arms race,'* Stanford School of Medicine (Feb. 6, 2019), https://med.stanford.edu/news/all-news/2019/02/5-questions-robert-jackler-says-juul-spurs-nicotine-arms-race.html.

FILED DATE: 5/14/2020 8:44 AM   2020CH04183



102.    JUUL further misrepresents that JUUL pods have as much nicotine as one pack of traditional cigarettes, when in fact, each JUUL pod contains as much nicotine as up to two packs of traditional cigarettes.[74]  *See* JUUL's Twitter post below.[75]

---

[74] Esther E. Omaiye, *High-Nicotine Electronic Cigarette Products: Toxicity of JUUL Fluids and Aerosols Correlates Strongly with Nicotine and Some Flavor Chemical Concentrations*, 32 Chem. Res. Toxicol. 1058, 1065 (2019).
[75] *Supra* note 40.

FILED DATE: 5/14/2020 8:44 AM   2020CH04183



*JUUL's Twitter Post from June 19, 2018*

103.    Even if JUUL pods contain the same amount of nicotine that is contained in a pack of traditional cigarettes by weight, JUUL users will still absorb more nicotine from a JUUL pod than a pack of traditional cigarettes due to the potency of JUUL's proprietary nicotine salt formulation.

104.    A 2018 study confirms that e-cigarette users absorb more nicotine than traditional cigarette users.  The study found higher levels of cotinine, a breakdown product of nicotine, in the urine of an adolescent e-cigarette user than had been reported in prior research of teens using traditional cigarettes.  Similarly, a study published in January of 2020 found that rodents exposed to JUUL had nicotine concentrations that were five times higher than cigarettes and eight times higher than other e-cigarettes.[76]

---

[76] Poonam Rao, *JUUL and Combusted Cigarettes Comparably Impair Endothelial Function*, 6 Tob. Regul. Sci. 30, 32-3 (2020).

FILED DATE: 5/14/2020 8:44 AM    2020CH04183

105.    In addition, JUUL devices allow users to consume exponentially more nicotine than a traditional cigarette, because they do not burn out or provide a clear indication of how much nicotine users are consuming.  In 2014, JUUL's founders applied for a patent that included methods for alerting consumers or disabling their devices when a predetermined amount of a substance, such as nicotine, had been consumed.  Yet, JUUL never sold an e-cigarette that limited nicotine consumption.

**B.    JUUL Misrepresents That Its Products Are Safe Or Less Harmful Than Traditional Cigarettes**

106.    Since the beginning, JUUL has continuously stated or implied that its products are safer or less harmful than traditional cigarettes.  For example, JUUL's vaporized campaign used the tagline "SMOKING EVOLVED" to suggest that JUUL products were superior to traditional cigarettes.  *See* an example of JUUL's "Smoking Evolved" tagline below.[77]



107.    During a so-called education and prevention program that JUUL conducted in high schools around 2017-2018, a JUUL representative claimed JUUL products were "totally

---

[77] *Supra* note 40.

FILED DATE: 5/14/2020 8:44 AM   2020CH04183

safe" and represented that the FDA would shortly "approve" JUUL products and "say [JUUL] was 99% safer than cigarettes."[78]

108.    Also, on May 8, 2018, JUUL posted a "Letter from the CEO" on its website that stated: "[JUUL's] simple and convenient system incorporates temperature regulation to heat nicotine liquid and deliver smokers the satisfaction that they want without the combustion and the harm associated with it."[79]

109.    JUUL's claims that its products are safer or less harmful than traditional cigarettes are unsubstantiated.  On September 9, 2019, the FDA sent JUUL a warning letter stating JUUL did not have FDA-approval to claim that its products were safe or less harmful than traditional cigarettes.[80]

110.    As previously mentioned, JUUL products are not safe because they contain significant amounts of nicotine, which is highly addictive and especially harmful to developing, adolescent brains.  Further, there is mounting evidence that e-cigarettes (including JUUL products) contain other harmful chemicals—in addition to nicotine.  Researchers have found significant levels of up to 31 harmful chemical compounds in e-cigarette vapors, including propylene glycol, glycidol, formaldehyde, acetaldehyde, and acrolein—all either carcinogens or respiratory irritants.[81]  Several studies have shown a link between e-cigarette use and lung and

---

[78] U.S. Food and Drug Administration, *Warning Letter - JUUL Labs, Inc.* (Sept. 9, 2019), https://www.fda.gov/inspections-compliance-enforcement-and-criminal-investigations/warning-letters/juul-labs-inc-590950-09092019.
[79] *Id.*
[80] *Id.*
[81] Mohamad Sleiman, et al., *Emissions from Electronic Cigarettes: Key Parameters Affecting the Release of Harmful Chemicals*, 50 Environ. Sci. Technol. 9644, 9646-7 (2016).

FILED DATE: 5/14/2020 8:44 AM   2020CH04183

heart diseases, neurological symptoms, cancer, and even DNA damage.  One study found two microbial toxins, endotoxin and glucan, in JUUL pods.[82]

111.     JUUL users may experience additional adverse health consequences by inadvertently drinking the e-liquid contained in JUUL pods.  JUUL has received more than 150,000 consumer complaints about JUUL pods leaking into consumers' mouths.[83]  JUUL told media outlets it "determined that leaks did not constitute a significant health hazard"; yet, users have reported health issues ranging from burning lungs to canker sores.  One user said her throat started bleeding after using mango JUUL pods, and that she was diagnosed with a "burned throat" by a doctor.

## C.     JUUL Misrepresents Its Products As Smoking-Cessation Devices

112.     In 2018, amidst tremendous regulatory pressure, JUUL noticeably shifted its marketing to emphasize adult smokers ███████████████████████████████████ ██████████████████████████████████."  The company's social media prominently featured adult smokers who allegedly improved their lives by switching from traditional cigarettes to JUUL.  For example, JUUL profiled Kathy, age 52, in a 2018 Instagram post and quoted her as saying: "I'm heading in the right direction thanks to JUUL."  *See* JUUL's Instagram post featuring Kathy below.[84]

---

[82] Mi-Sun Lee et al., *Microbial Toxins in Nicotine Vaping Liquids*, 201 AJRCCM 741, 742-3 (2020).
[83] Nicole Wetsman, *Hundreds of thousands of customers complained to JUUL about leaky pods*, The Verge (Jan. 13, 2020), https://www.theverge.com/2020/1/13/21064511/juul-customer-complaint-health-pod-leak-nicotine.
[84] *Supra* note 40.

FILED DATE: 5/14/2020 8:44 AM   2020CH04183



113.     From at least January 2019 until around September 2019, JUUL has used the

tagline "MAKE THE SWITCH" and "The Alternative For Adult Smokers" in its national

marketing campaigns, which included Chicago. ███████████████████████████████

███████████████████████████████████████████████. *See* examples of

JUUL's make the switch marketing below.[85]

---

[85] *Supra* note 40.

FILED DATE: 5/14/2020 8:44 AM  2020CH04183





*JUUL's 2018 print ad and Twitter posts from May 23, 2018 and July 2, 2018, respectively*

114.    JUUL has represented since at least April of 2018 that its mission is to "improve the lives of the world's one billion adult smokers by eliminating cigarettes."  It also ██████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████.

115.    JUUL's claim that its products can help people quit smoking are unsubstantiated. JUUL products are not FDA-approved for smoking cessation.  Further, JUUL did not design its products for smoking cessation.  Back in 2015, one of JUUL's research and development engineers told a news outlet, "We don't think a lot about addiction here because we're not trying

47

to design a cessation product at all."[86]  And James Monsees, one of JUUL's founders, said JUUL wanted to create a "luxury experience."[87]  He said, "You don't have to [smoke] but you want to do it.  It's something that you decide to do and because it's sort of a chosen thing that you want in your life, you want that to be an awesome experience, right?  Just a sort of elegant, refined experience."

116.    JUUL's intent that its products would not be limited to adult smokers is also evidenced by its product insert, which instructs users how to find their "perfect puff" – clearly something an experienced smoker would not need.

117.    Further, studies have shown that, at least with youth, e-cigarette use *increases* the likelihood that non-smokers will begin smoking traditional cigarettes.[88]  And the previously mentioned study on the long-term effect of e-cigarettes found that many adult e-cigarette users continue to smoke traditional cigarettes.[89]  As a result, those users had a significantly higher risk of developing chronic lung disease than someone who just used either e-cigarettes or traditional cigarettes alone.

## CLAIMS FOR RELIEF

### COUNT I – AGAINST ALL DEFENDANTS
### CONSUMER FRAUD – UNFAIR PRACTICES
### VIOLATION OF MCC § 2-25-090

118.    Chicago incorporates all preceding allegations as if they were set forth herein.

---

[86] Nitasha Tiku, *Startup behind the Lambo of vaporizers just launched an intelligent e-cigarette*, The Verge (Apr. 21, 2015), https://www.theverge.com/2015/4/21/8458629/pax-labs-e-cigarette-juul.
[87] *Supra* note 34.
[88] *Supra* note 32.
[89] *Supra* note 24.

FILED DATE: 5/14/2020 8:44 AM   2020CH04183

FILED DATE: 5/14/2020 8:44 AM    2020CH04183

119.    The MCC § 2-25-090 makes it unlawful for a business to "engage in any act of consumer fraud, unfair method of competition, or deceptive practice while conducting any trade or business in the city," including "any conduct constituting an unlawful practice under the Illinois Consumer Fraud and Deceptive Business Practices Act."  The Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2, makes unlawful, among other things, "[u]nfair . . . acts or practices."

120.    The Defendants violated MCC § 2-25-090 because their conduct offends public policy, is immoral, unethical, oppressive, and unscrupulous, and causes substantial injury to youth consumers.

121.    Specifically, JUUL violated MCC § 2-25-090 by:

    a.    marketing JUUL products to youth residents in Chicago;

    b.    selling JUUL products to youth residents in Chicago; and

    c.    failing to implement adequate policies and practices to prevent sales to youth residents in Chicago online and in retail locations.

122.    Specifically, the Retailer Defendants violated MCC § 2-25-090 by engaging in inadequate age verification and selling JUUL products to minors.

123.    The MCC provides that any person who violates Section 2-25-090 shall be subject to a fine up to $10,000 for each offense.  Each day that a violation continues shall constitute a separate and distinct offense to which a separate fine shall apply.  MCC § 2-25-090(g).  Chicago is therefore entitled to fines for each offense on each day that JUUL violated MCC § 2-25-090.

124.    The MCC also authorizes "injunctive" and "equitable" relief for violations of Section 2-25-090.  MCC § 2-25-090(f)(4).  Chicago is therefore entitled to injunctive and equitable relief as described below.

FILED DATE: 5/14/2020 8:44 AM   2020CH04183

**COUNT II – AGAINST ALL DEFENDANTS**
**Violation of MCC § 4-64-345**

125.    Chicago incorporates all proceeding allegations as if they were set forth herein.

126.    Defendants are retailers of tobacco products, primarily JUUL devices and JUUL pods.  A "tobacco product" under the MCC "means any electronic cigarette . . . or component or part thereof."  MCC § 4-64-100.

127.    Defendants violated MCC § 4-64-345 by selling or otherwise furnishing tobacco products for consumption to Chicago residents under 21 years of age.

128.    The MCC provides that any person "who violates Section 4-64-345 shall be punished by a fine of not less than $1,000 nor more than $5,000 for each offense.  Each day that a violation continues shall constitute a separate and distinct offense."  MCC § 4-64-910. Chicago is therefore entitled to fines for each offense on each day that Defendants committed violations of MCC § 4-64-345.

**COUNT III – AGAINST JUUL**
**CONSUMER FRAUD – DECEPTIVE PRACTICES**
**VIOLATION OF MCC § 2-25-090**

129.    Chicago incorporates all preceding allegations as if they were set forth herein.

130.    The MCC § 2-25-090 makes it unlawful for a business to "engage in any . . . deceptive practice while conducting any trade or business in the city."

131.    At all times relevant to this Complaint, while engaged in trade or commerce, JUUL engaged in deceptive practices in violation of MCC § 2-25-090 by making and disseminating untrue, false, and misleading statements and material omissions to Chicago consumers to promote JUUL products with the intent that consumers rely on the deceptive acts and practices.  These untrue, false and misleading statements and material omissions include, but are not limited to:

FILED DATE: 5/14/2020 8:44 AM   2020CH04183

a.    Misrepresenting to youth consumers that JUUL products are harmless, fun, and trendy products to use socially, when in fact, JUUL products are hazardous and addictive;

b.    Failing to disclose to consumers that JUUL products contain nicotine and that nicotine is an addictive substance;

c.    Misrepresenting that JUUL pods are 5% nicotine, when in fact, JUUL pods are approximately 6% nicotine when measuring by the industry standard;

d.    Misrepresenting that JUUL pods contain the nicotine equivalent of one pack of traditional cigarettes, when in fact, JUUL pods contain the nicotine equivalent of up to two packs of traditional cigarettes;

e.    Failing to disclose that consumers absorb more nicotine from JUUL pods than traditional cigarettes;

f.    Misrepresenting to consumers that JUUL products are safe or less harmful than traditional cigarettes, when in fact, JUUL does not have evidence to substantiate such a claim; and

g.    Misrepresenting to consumers that JUUL products are effective for smoking cessation, when in fact, JUUL does not have evidence to substantiate such a claim and its products are not FDA-approved for such a use.

132.    The MCC provides that any person who violates Section 2-25-090 shall be subject to a fine up to $10,000 for each offense.  Each day that a violation continues shall constitute a separate and distinct offense to which a separate fine shall apply.  MCC § 2-25-090(g).  Chicago is therefore entitled to fines for each offense on each day that JUUL violated MCC § 2-25-090.

FILED DATE: 5/14/2020 8:44 AM   2020CH04183

133.    The MCC also authorizes "injunctive" and "equitable" relief for violations of Section 2-25-090.  MCC § 2-25-090(f)(4).  Chicago is therefore entitled to injunctive and equitable relief as described below.

### REQUEST FOR RELIEF

Chicago respectfully requests that the Court enter an order granting the following relief:

A.    Declaring that Defendants have violated the MCC § 2-25-090;

B.    Enjoining Defendants from engaging in unfair and unlawful business practices, as described in this Complaint, in violation of MCC § 2-25-090;

C.    Enjoining Defendants from selling tobacco products to Chicago residents under the age of 21, as described in this Complaint, in violation of MCC § 2-25-090;

D.    Enjoining Defendants from selling tobacco products to Chicago residents without adequate age verification, as described in this Complaint, in violation of MCC § 2-25-090;

E.    Enjoining JUUL from engaging in any deceptive practice, as described in this Complaint, in violation of MCC § 2-25-090;

F.    Assessing Defendants a maximum fine of $5,000 for each violation of MCC § 4-64-345 for each day such violation occurs;

G.    Assessing Defendants a maximum fine for each violation of MCC § 2-25-090 involving a Chicago resident, in the amount of $10,000 for each day such violation has existed and continues to exist;

H.    Awarding Chicago reasonable attorneys' fees and costs;

I.    Awarding Chicago pre- and post-judgment interest, to the extent allowable;

J.    Awarding such other injunctive and declaratory relief as is necessary; and

K.      Awarding such other relief as the Court deems reasonable and just.

## JURY DEMAND

Chicago requests a trial by jury of all claims.

Dated: May 14, 2020                           Respectfully submitted,


                                              MARK A. FLESSNER
                                              Corporation Counsel of the City of Chicago
                                              By: /s/ Mark A. Flessner

Stephen J. Kane
stephen.kane@cityofchicago.org
Rebecca A. Hirsch
rebecca.hirsch2@cityofchicago.org
Elie T. Zenner
elie.zenner@cityofchicago.org
City of Chicago Department of Law
Affirmative Litigation Division
121 North LaSalle Street, Room 600
Chicago, IL 60602
Tel:    312-744-6934
Fax:    312-744-5185

MOTLEY RICE LLC
Mimi Liu
mliu@motleyrice.com
*Pro hac* to be submitted
Linda Singer
lsinger@motleyrice.com
*Pro hac* to be submitted
Elizabeth Smith
esmith@motleyrice.com
*Pro hac* to be submitted
E. Paige Boggs
ARDC # 6299126
pboggs@motleyrice.com
401 9th Street NW, Suite 1001
Washington, D.C. 20004
Telephone: 202-386-9625
Facsimile: 202-386-9622

FILED DATE: 5/14/2020 8:44 AM   2020CH04183

Return Date: No return date scheduled
Hearing Date: 9/11/2020 9:30 AM - 9:30 AM
Courtroom Number: 2408
Location: District 1 Court
    Cook County, IL

FILED
5/14/2020 8:44 AM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2020CH04183

9252279

FILED DATE: 5/14/2020 8:44 AM  2020CH04183

<u>Fee Exempt and Reduced Fee Agency Cover Sheet</u>       (04/02/19) CCG 0020 A

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

City of Chicago

           v.

JUUL Labs, Inc., et al.

Case No.   **2020CH04183**
_____

## FEE EXEMPT AND REDUCED FEE AGENCY COVER SHEET

In order to ensure the proper collection of fees, a Fee Exemption Cover Sheet shall be filed with the initial pleading by a party in all civil actions filed by a law enforcement agency or unit of local government wherein such agency seeks a fee exemption. The information contained herein is for administrative purposes only and cannot be introduced into evidence. Please mark the classification exempting the agency filing this action from the full amount of statutory fees, and sign the cover sheet as indicated on the reverse side.

**Exemptions pursuant to 705 ILCS 105/27.2 and 705 ILCS 105/27.2a:**

☐ Illinois Attorney General
☐ Illinois State Appellate Defender
☐ Illinois Office of the Appellate Prosecutor
☐ Illinois County Public Defender's Office
☐ Illinois County State's Attorney's Office
☐ Illinois State Police
☐ Illinois Department of Corrections
☐ Municipal Police
☐ Sheriff's Dept within the State of Illinois

☐ CHA Police
☐ CTA Police
☐ Cook County Forest Preserve Police
☐ University/College Police
☐ Metra Police
☐ Park District Police
☐ Illinois Gaming Board Special Agents
☑ Other  <u>See Attachment for explanation</u>
                (Name of Agency)

**Other agencies/case types exempt from fees:**

☐ The Director of the Department of Insurance under 215 ILCS 5/203
☐ The Illinois Department of Revenue under 35 ILCS 5/1106
☐ The Illinois Department of Revenue under 35 ILCS 520/20
☐ Any action instituted under 65 ILCS 5/11-31-1(b) by a private owner or tenant of real property
☐ Department of Children and Family Services under 755 ILCS 5/11a-10 (c) (The Probate Act")
☐ Appointment of a guardian under 755 ILCS 5/11-11 (proper expenditure of public assistance; collection, disbursement or administering of money or assets derived from money awarded by the Veteran's Administration; minor patient in a State mental health or developmental disabilities facility, estate value less than $1,000)

**Dorothy Brown, Clerk of the Circuit Court of Cook County, Illinois**
**cookcountyclerkofcourt.org**

FILED DATE: 5/14/2020 8:44 AM   2020CH04183

**Fee Exempt and Reduced Fee Agency Cover Sheet**                    **(04/02/19) CCG 0020 B**

Appointment of a guardian under 755 ILCS 5/11a-13 (estate of mentally disabled person residing in a state mental health or developmental disabilities facility, estate value less than $1,000; Office of the State Guardian)

Claimants in proceedings under the Unemployment Insurance Act, 820 ILCS 405/1200

An action under 35 ILCS 200/22-35 for reimbursement of a municipality before issuance of a tax deed other agencies/case types exempt from fee. (continued from page 1).

The investigative arm of the Attorney Registration and Disciplinary Commission

Cook County officials, departments and agencies pursuant to Cook County, Illinois, Code of Ordinances, Part I, Chapter 18, Article II, Sec. 31 (b)

Department of Children and Family Services if it is the petitioner where the minor has been committed by the court to DCFS under the Juvenile Court Act of 1987, 755 ILCS 5/11a-10 (c)

**The following units of local government receive reduced fees as outlined in 705 ILCS 105/27.2:**

| | | |
|---|---|---|
| City of Chicago | Hospital District | School District |
| Municipality/Township | Chicago Housing Authority | Library District |
| Road District | Department of Public Works | Metropolitan Water Reclamation |
| Fire Protection District | CTA | District |
| Park District | Metra | Conservation District |
| Mosquito Abatement District | Pace | |
| Public Health District | Regional Transit Authority | Other: |
| Airport Authority | Municipal License Appeal | |
| City Colleges of Chicago | Commission | |
| | Chicago Board of Education | (Name of Agency) |

By: _____               Stephen J. Kane
            (Signature)                                (Printed Name)

Employee _____     Deputy Corporation Counsel _____
      (Affiliation with Agency)                    (Title if with Agency, Attorney, etc.)

On behalf of _City of Chicago Department of Law_
                                              (Agency)

and the Agency Head (Director, CIO, etc.), _Mark A. Flessner_____
                                                              (Printed Name)

Atty. No.: _90909_____

Atty Name: _Stephen J. Kane_____

Atty. for: _City of Chicago_____

Address: _121 N. LaSalle St., Room 600_

City: _Chicago_____

State: __IL___ Zip: _60602_____

Telephone: _312-744-6934_____

Primary Email: _stephen.kane@cityofchicago.org___

**Dorothy Brown, Clerk of the Circuit Court of Cook County, Illinois**
cookcountyclerkofcourt.org

FILED DATE: 5/14/2020 8:44 AM   2020CH04183

## ATTACHMENT

Plaintiff City of Chicago (the "City") is exempt from the filing fee because (a) the City is a unit of local government and (b) the complaint seeks to enforce City ordinances. *See* 705 ILCS 105/27.1b(z)(1)(A-5) ("no fee may be charged to any unit of local government … in connection with any action which, in whole or in part, is … to enforce an ordinance").

Return Date: No return date scheduled
Hearing Date: 9/11/2020 9:30 AM - 9:30 AM
Courtroom Number: 2408
Location: District 1 Court
    Cook County, IL

FILED
5/14/2020 8:44 AM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2020CH04183

9252279

FILED DATE: 5/14/2020 8:44 AM   2020CH04183

**Chancery Division Civil Cover Sheet**
**General Chancery Section**

(02/19/20) CCCH 0623

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

CITY OF CHICAGO

                     Plaintiff

v.

JUUL LABS, INC., et al.

                     Defendant

Case No: _____

### 2020CH04183

### CHANCERY DIVISION CIVIL COVER SHEET
### GENERAL CHANCERY SECTION

A Chancery Division Civil Cover Sheet - General Chancery Section shall be filed with the initial complaint in all actions filed in the General Chancery Section of Chancery Division. The information contained herein is for administrative purposes only. Please check the box in front of the appropriate category which best characterizes your action being filed.

**Only one (1) case type may be checked with this cover sheet.**

| | | | | | |
|---|---|---|---|---|---|
| 0005 | ☐ Administrative Review | | 0017 | ☐ Mandamus |
| 0001 | ☐ Class Action | | 0018 | ☐ Ne Exeat |
| 0002 | ☐ Declaratory Judgment | | 0019 | ☐ Partition |
| 0004 | ☑ Injunction | | 0020 | ☐ Quiet Title |
| | | | 0021 | ☐ Quo Warranto |
| 0007 | ☐ General Chancery | | 0022 | ☐ Redemption Rights |
| 0010 | ☐ Accounting | | 0023 | ☐ Reformation of a Contract |
| 0011 | ☐ Arbitration | | 0024 | ☐ Rescission of a Contract |
| 0012 | ☐ Certiorari | | 0025 | ☐ Specific Performance |
| 0013 | ☐ Dissolution of Corporation | | 0026 | ☐ Trust Construction |
| 0014 | ☐ Dissolution of Partnership | | 0050 | ☐ Internet Take Down Action (Compromising Images) |
| 0015 | ☐ Equitable Lien | | | |
| 0016 | ☐ Interpleader | | | ☐ Other (specify) _____ |

◉ Atty. No.: 90909     ○ Pro Se 99500

Atty Name: Stephen J. Kane

Atty. for: City of Chicago

Address: 121 North LaSalle Street, Room 600

City: Chicago     State: IL

Zip: 60602

Telephone: (312) 744-6934

Primary Email: stephen.kane@cityofchicago.org

Pro Se Only: ☐ I have read and agree to the terms of the Clerk's Office Electronic Notice Policy and choose to opt in to electronic notice from the Clerk's office for this case at this email address:

Email: _____

**Dorothy Brown, Clerk of the Circuit Court of Cook County, Illinois**

Return Date: No return date scheduled
Hearing Date: 9/11/2020 9:30 AM - 9:30 AM
Courtroom Number: 2408
Location: District 1 Court
    Cook County, IL

FILED
5/14/2020 8:44 AM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2020CH04183

9252279

FILED DATE: 5/14/2020 8:44 AM 2020CH04183

| 2120 - Served | 2121 - Served |
| 2220 - Not Served | 2221 - Not Served |
| 2320 - Served By Mail | 2321 - Served By Mail |
| 2420 - Served By Publication | 2421 - Served By Publication |

Summons - Alias Summons                (08/01/18) CCG 0001 A

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

City of Chicago

(Name all parties)

v.

Case No. **2020CH04183**

JUUL Labs, Inc., Leah Mdl Inc. d/b/a Rbs Mobil, 2550 Pulaski Business, Inc. d/b/a Mobil, 4901 Central Inc. d/b/a Mobil, T and M Gas, Inc. d/b/a Shell, and Irving Shell Gas and Food, Inc.

✓ **SUMMONS**      **ALIAS SUMMONS**

To each Defendant:

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance and pay the required fee **within thirty (30) days after service of this Summons**, not counting the day of service. To file your answer or appearance you need access to the internet. Please visit www.cookcountyclerkofcourt.org to initiate this process. Kiosks with internet access are available at all Clerk's Office locations. Please refer to the last page of this document for location information.

**If you fail to do so, a judgment by default may be entered against you for the relief requested in the complaint.**

To the Officer:

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than thirty (30) days after its date.

**Dorothy Brown, Clerk of the Circuit Court of Cook County, Illinois**
**cookcountyclerkofcourt.org**
Page 1 of 3

**Summons - Alias Summons** (08/01/18) CCG 0001 B

**E-filing is now mandatory for documents in civil cases with limited exemptions. To e-file, you must first create an account with an e-filing service provider. Visit http://efile.illinoiscourts.gov/service-providers.htm to learn more and to select a service provider. If you need additional help or have trouble e-filing, visit http://www.illinoiscourts.gov/FAQ/gethelp.asp, or talk with your local circuit clerk's office.**

Atty. No.: 90909

Atty Name: Stephen J. Kane

Atty. for: City of Chicago

Address: 121 North LaSalle Street, Room 600

City: Chicago

State: IL    Zip: 60602

Telephone: (312) 744-6934

Primary Email: stephen.kane@cityofchicago.org

Witness: _____

5/14/2020 8:44 AM DOROTHY BROWN

DOROTHY BROWN, Clerk of Court

Date of Service
(To be inserted by officer on copy left with
Defendant or other person:

# CLERK OF THE CIRCUIT COURT OF COOK COUNTY OFFICE LOCATIONS

FILED DATE: 5/14/2020 8:44 AM  2020CH04183

○ Richard J Daley Center
50 W Washington
Chicago, IL 60602

○ District 2 - Skokie
5600 Old Orchard Rd
Skokie, IL 60077

○ District 3 - Rolling Meadows
2121 Euclid
Rolling Meadows, IL 60008

○ District 4 - Maywood
1500 Maybrook Ave
Maywood, IL 60153

○ District 5 - Bridgeview
10220 S 76th Ave
Bridgeview, IL 60455

○ District 6 - Markham
16501 S Kedzie Pkwy
Markham, IL 60428

○ Domestic Violence Court
555 W Harrison
Chicago, IL 60607

○ Juvenile Center Building
2245 W Ogden Ave, Rm 13
Chicago, IL 60602

○ Criminal Court Building
2650 S California Ave, Rm 526
Chicago, IL 60608

**Daley Center Divisions/Departments**

○ Civil Division
Richard J Daley Center
50 W Washington, Rm 601
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

◉ Chancery Division
Richard J Daley Center
50 W Washington, Rm 802
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

○ Domestic Relations Division
Richard J Daley Center
50 W Washington, Rm 802
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

○ Civil Appeals
Richard J Daley Center
50 W Washington, Rm 801
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

○ Criminal Department
Richard J Daley Center
50 W Washington, Rm 1006
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

○ County Division
Richard J Daley Center
50 W Washington, Rm 1202
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

○ Probate Division
Richard J Daley Center
50 W Washington, Rm 1202
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

○ Law Division
Richard J Daley Center
50 W Washington, Rm 801
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

○ Traffic Division
Richard J Daley Center
50 W Washington, Lower Level
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

**Dorothy Brown, Clerk of the Circuit Court of Cook County, Illinois**
**cookcountyclerkofcourt.org**

Return Date: No return date scheduled
Hearing Date: No hearing scheduled
Courtroom Number: No hearing scheduled
Location: No hearing scheduled

(12/30/15) CCL N530

FILED
5/21/2020 10:33 AM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2020CH04183

9299668

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

CHANCERY

City of Chicago
_____
                                    Plaintiff
                v.
Juul Labs, Inc. et al.
_____
                                    Defendant

No. 2020 CH 04183
_____

Calendar: _____

FILED DATE: 5/21/2020 10:33 AM  2020CH04183

## APPEARANCE

☑ GENERAL APPEARANCE  0900 - APPEARANCE - FEE PAID;  0909 - APPEARANCE - NO FEE;
0904 - APPEARANCE FILED - FEE WAIVED

☐ JURY DEMAND  1900 - APPEARANCE & JURY DEMAND - FEE PAID
1909 - APPEARANCE & JURY DEMAND - NO FEE

The undersigned enters the appearance of:     ☐ Plaintiff     ☑ Defendant

Leah Mol, Inc dba Rog Mobil
_____

_____
(Insert litigant's name.)

_____
                        Signature

☑ INITIAL COUNSEL OF RECORD   ☐ PRO SE
☐ ADDITIONAL APPEARANCE       ☐ SUBSTITUTE APPEARANCE

A copy of this appearance shall be given to all parties who have appeared and have not been found by the Court to be in default.

☑ Atty. No.: 54791_____   ☐ Pro Se 99500
(Please complete the following contact information.)
Name: Steven L. Venit
Atty. for: _____
Address: 3240 W. Irving Park Rd.
City/State/Zip: Chicago, Il. 60618
Telephone: 773-477-9998
Primary Email: vmattk@aol.com
Secondary Email: _____
Tertiary Email: _____

**Pro Se Only:** ☐ I have read and agree to the terms of the Clerk's Office Electronic Notice Policy and choose to opt in to electronic notice from the Clerk's office for this case at this email address:

_____

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
Page 1 of 1

Return Date: No return date scheduled
Hearing Date: No hearing scheduled
Courtroom Number: No hearing scheduled
Location: No hearing scheduled

FILED
5/21/2020 10:33 AM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2020CH04183

9299668

FILED DATE: 5/21/2020 10:33 AM   2020CH04183

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT - CHANCERY DIVISION

| | |
|---|---|
| CITY OF CHICAGO, a municipal corporation, | ) ) ) |
| Plaintiff, | ) ) ) |
| v | ) ) **Case No.: 2020CH04183** |
| JUUL LABS, INC., LEAH MOL, INC. d/b/a ROG MOBIL, 2550 Pulaski Business, Inc. d/b/a A MOBIL, 4901 Central, Inc. d/b/a MOBIL, T and M GAS, INC. d/b/a SHELL, and IRVING SHELL GAS AND FOOD, INC., | ) ) ) ) ) ) ) ) |
| Defendants. | ) |

### DEFENDANT'S ANSWER TO THE PLAINTIFF'S COMPLAINT AND DEMAND FOR A JURY TRIAL

NOW COMES, the Defendant's. **LEAH MOL, INC., d/b/a ROG MOBIL,** and answering the Complaint as follows:

### Introduction

1-11    The Defendant cannot neither admit or deny the allegations contained in paragraph 1 through 11 of the Plaintiff's Complaint since the Defendant does not possess specific knowledge of the allegations contained in the Plaintiff's Complaint in paragraph 1 through 11.

### Parties

12.    The Defendant admits the allegations contained in paragraph 12 of the Plaintiff's Complaint since the Defendant does not possess specific knowledge of the allegations contained in the Plaintiff's Complaint in paragraph 12.

FILED DATE: 5/21/2020 10:33 AM  2020CH04183

13.    The Defendant admits the allegations contained in paragraph 13 of the Plaintiff's Complaint since the Defendant does not possess specific knowledge of the allegations contained in the Plaintiff's Complaint in paragraph 13.

14.    The Defendant admits the allegations contained in paragraph 14 of the Plaintiff's Complaint since the Defendant does not possess specific knowledge of the allegations contained in the Plaintiff's Complaint in paragraph 14.

15-19.    The Defendant neither admits or denies the allegations contained in the Plaintiff's Complaint in paragraphs 15 through 19 since the Defendant does not possess specific knowledge of the allegations contained in paragraphs 15 through 19 of the Plaintiff's Complaint.

### Jurisdiction

20.    The Defendant admits the allegations contained in paragraph 20 of the Plaintiff's Complaint.

21.    The Defendant admits the allegations contained in paragraph 21 of the Plaintiff's Complaint.

22.    The Defendant admits the allegations contained in paragraph 22 of the Plaintiff's Complaint since.

### General Allegations

23.    The Defendant neither admits nor denies the allegations contained in paragraph 23 of the Plaintiff's complaint since the Defendant does not possess specific knowledge of the allegations contained in paragraph 23 of the Plaintiff's Complaint.

24.    The Defendant neither admits nor denies the allegations contained in paragraph 24 of the Plaintiff's Complaint since the Defendant does not possess specific knowledge of the allegations contained in paragraph 24 of

FILED DATE: 5/21/2020 10:33 AM   2020CH04183

the Plaintiff's Complaint.

25.    The Defendant admits the allegations continued in paragraph 25 of the Plaintiff's Complaint since the Defendant does not possess specific knowledge of the allegations contained in paragraph 25 of the Plaintiff's Complaint.

26.    The Defendant neither admits nor denies the allegations contained in paragraph 26 of the Plaintiff's Complaint since the Defendant does not possess specific knowledge of the allegations contained in paragraph 26 of the Plaintiff's Complaint.

27.    The Defendant neither admits nor denies the allegations contained in paragraph 27 of the Plaintiff's Complaint since the Defendant does not possess specific knowledge of the allegations contained in paragraph 27 of the Plaintiff's Complaint.

**II. Youth E-Cigarette is unsafe.**

28.    The Defendant neither admits nor denies the allegations contained in paragraph 28 of the Plaintiff's Complaint since the Defendant does not possess specific knowledge of the allegations contained in paragraph 28 of the Plaintiff's Complaint.

**A.**    **Youth are at high risk for developing nicotine addiction.**

29-32    The Defendant neither admits nor denies the allegations contained in paragraphs 29 through 32 of the Plaintiff's Complaint since the Defendant does not possess specific knowledge of the allegations contained in paragraphs 29 through 32 of the Plaintiff's Complaint.

**B.**    **Nicotine can seriously harm adolescent brains.**

33-34    The Defendant neither admits nor denies the allegations contained in paragraphs 33 through 34 of th Plaintiff's Complaint since the Defendant does not possess specific knowledge of the allegations contained in

FILED DATE: 5/21/2020 10:33 AM    2020CH04183

paragraphs 33 through 34 of the Plaintiff's Complaint .

**C.      E-Cigarettes expose youth to other hazardous chemicals and health risks.**

35-40    The Defendant neither admits nor denies the allegations contained in paragraphs 35 through 40 of the Plaintiff's Complaint since the Defendant does not possess specific knowledge of the allegations contained in paragraphs 33 through 34 of the Plaintiff's Complaint.

**D.      E-Cigarettes can be a gateway to traditional tobacco products.**

41.      The Defendant neither admits nor denies the allegations contained in paragraph 41 of the  Plaintiff's Complaint since the Defendant does not possess specific knowledge of the allegations contained in paragraph 41 of the Plaintiff's Complaint.

**III. JUUL aggressively targeted youth.**

42-45    The Defendant neither admits nor denies the allegations contained in paragraphs 42 through 45 of the  Plaintiff's Complaint since the Defendant does not possess specific knowledge of the allegations contained in paragraphs 42 through 45 of the Plaintiff's Complaint.

**A.      JUUL designed its product to appeal to underage users.**

46-48    The Defendant neither admits nor denies the allegations contained in paragraphs 46 through 48 of the  Plaintiff's Complaint since the Defendant does not possess specific knowledge of the allegations contained in paragraphs 46 through 48 of the Plaintiff's Complaint.

**B.      JUUL marketed youth - friendly flavors.**

49-53    The Defendant neither admits nor denies the allegations contained in paragraphs 49 through 53 of the  Plaintiff's Complaint since the Defendant does not possess specific knowledge of the allegations contained in paragraphs 49 through 53 of the Plaintiff's Complaint.

**C.      JUUL's marketing showed youth, trendy people having fun.**

54-60    The Defendant neither admits nor denies the allegations contained in

-4-

FILED DATE: 5/21/2020 10:33 AM   2020CH04183

paragraphs 54 through 60 of the Plaintiff's Complaint since the Defendant does not possess specific knowledge of the allegations contained in paragraphs 54 through 60 of the Plaintiff's Complaint.

**D.      JUUL used social media to reach youth.**

61-71    The Defendant neither admits nor denies the allegations contained in paragraphs 61 through 71 of the Plaintiff's Complaint since the Defendant does not possess specific knowledge of the allegations contained in paragraphs 61 through 71 of the Plaintiff's Complaint.

**E.      JUUL hosted youth - oriented launch events.**

72-74    The Defendant neither admits nor denies the allegations contained in paragraphs 72 through 74 of the Plaintiff's Complaint since the Defendant does not possess specific knowledge of the allegations contained in paragraphs 72 through 74 of the Plaintiff's Complaint.

**IV.  Defendants failed to restrict adequately JUUL sales to consumers of legal age.**

**A.      JUUL lax procedures resulted in significant sales to minors.**

75.      The Defendant neither admits nor denies the allegations contained in paragraph 75 of the Plaintiff's Complaint since the Defendant does not possess specific knowledge of the allegations contained in paragraph 75 of the Plaintiff's Complaint.

**1.      JUUL'S on line age - verification system is flawed.**

76-82    The Defendant neither admits nor denies the allegations contained in paragraphs 76 through 82 of the Plaintiff's Complaint since the Defendant does not possess specific knowledge of the allegations contained in paragraphs 76 through 82 of the Plaintiff's Complaint.

**2.      JUUL's system contained too many loopholes.**

83-86    The Defendant neither admits nor denies the allegations contained in paragraphs 83 through 86 of the Plaintiff's Complaint since the Defendant

FILED DATE: 5/21/2020 10:33 AM   2020CH04183

does not possess specific knowledge of the allegations contained in paragraphs 83 through 86 of the Plaintiff's Complaint.

**3.      JUUL failed to adequately oversee retailers.**

85-90   The Defendant neither admits nor denies the allegations contained in paragraphs 85 through 90 of the Plaintiff's Complaint since the Defendant does not possess specific knowledge of the allegations contained in paragraphs 85 through 90 of the Plaintiff's Complaint.

**B.      The retail Defendant sold JUUL products to underage consumer.**

91      The Defendant neither admits nor denies the allegations contained in paragraph 91 and they specifically deny any allegations against them which alleges that they sold any and all JUUL products at their place of business at any under age individual at their place of business.

92,93,   The Defendant neither admits nor denies the allegations contained in
94, 96   paragraphs 92,93,94 and 96 of the Plaintiff's Complaint since the Defendant does not possess specific knowledge of the allegations contained in paragraphs 92, 93, 94 and 96 of the Plaintiff's Complaint.

95.      The Defendant denies the allegations contained in paragraph 95 of the Plaintiff's Complaint. since the Defendant does not possess specific knowledge of the allegations contained in paragraph 95 of the Plaintiff's Complaint.

96.      The Defendant denies the allegations contained in paragraph 96 of the Plaintiff's Complaint. since the Defendant does not possess specific knowledge of the allegations contained in paragraph 96 of the Plaintiff's Complaint.

**V.  JUUL misrepresents and/or fails to disclose material information about its products.**

97.      The Defendant neither admits nor denies the allegations contained in paragraph 97 of the Plaintiff's Complaint since the Defendant does not

FILED DATE: 5/21/2020 10:33 AM   2020CH04183

possess specific knowledge of the allegations contained in paragraphs 97 of the Plaintiff's Complaint.

**A.**   **Deceptively represents the nicotine contents of its pods.**

98.   The Defendant neither admits nor denies the allegations contained in paragraph 98 of the Plaintiff's Complaint since the Defendant does not possess specific knowledge of the allegations contained in paragraphs 98 of the Plaintiff's Complaint.

99.   The Defendant neither admits nor denies the allegations contained in paragraph 99 of the Plaintiff's Complaint since the Defendant does not possess specific knowledge of the allegations contained in paragraphs 99 of the Plaintiff's Complaint.

100.   The Defendant neither admits nor denies the allegations contained in paragraph 100 of the Plaintiff's Complaint since the Defendant does not possess specific knowledge of the allegations contained in paragraphs 100 of the Plaintiff's Complaint.

101.   The Defendant neither admits nor denies the allegations contained in paragraph 101 of the Plaintiff's Complaint since the Defendant does not possess specific knowledge of the allegations contained in paragraphs 101 of the Plaintiff's Complaint.

102.   The Defendant neither admits nor denies the allegations contained in paragraph 102 of the Plaintiff's Complaint since the Defendant does not possess specific knowledge of the allegations contained in paragraphs 102 of the Plaintiff's Complaint.

103.   The Defendant neither admits nor denies the allegations contained in paragraph 103 of the Plaintiff's Complaint since the Defendant does not possess specific knowledge of the allegations contained in paragraphs 103 of the Plaintiff's Complaint.

FILED DATE: 5/21/2020 10:33 AM   2020CH04183

104. The Defendant neither admits nor denies the allegations contained in paragraph 104 of the Plaintiff's Complaint since the Defendant does not possess specific knowledge of the allegations contained in paragraphs 104 of the Plaintiff's Complaint.

105. The Defendant neither admits nor denies the allegations contained in paragraph 105 of the Plaintiff's Complaint since the Defendant does not possess specific knowledge of the allegations contained in paragraphs 105 of the Plaintiff's Complaint.

**B.      JUUL misrepresents that its products are safe or less harmful that traditional cigarettes.**

106. The Defendant neither admits nor denies the allegations contained in paragraph 106 of the Plaintiff's Complaint since the Defendant does not possess specific knowledge of the allegations contained in paragraphs 106 of the Plaintiff's Complaint.

107. The Defendant neither admits nor denies the allegations contained in paragraph 107 of the Plaintiff's Complaint since the Defendant does not possess specific knowledge of the allegations contained in paragraphs 107 of the Plaintiff's Complaint.

108. The Defendant neither admits nor denies the allegations contained in paragraph 108 of the Plaintiff's Complaint since the Defendant does not possess specific knowledge of the allegations contained in paragraphs 108 of the Plaintiff's Complaint.

109. The Defendant neither admits nor denies the allegations contained in paragraph 109 of the Plaintiff's Complaint since the Defendant does not possess specific knowledge of the allegations contained in paragraphs 109 of the Plaintiff's Complaint.

110. The Defendant neither admits nor denies the allegations contained in paragraph 110 of the Plaintiff's Complaint since the Defendant does not

FILED DATE: 5/21/2020 10:33 AM   2020CH04183

possess specific knowledge of the allegations contained in paragraphs 110 of the Plaintiff's Complaint.

111.    The Defendant neither admits nor denies the allegations contained in paragraph 111 of the Plaintiff's Complaint since the Defendant does not possess specific knowledge of the allegations contained in paragraphs 111 of the Plaintiff's Complaint.

**C.    JUUL misrepresents its products as smoking-cessation devices.**

112.    The Defendant neither admits nor denies the allegations contained in paragraph 112 of the Plaintiff's Complaint since the Defendant does not possess specific knowledge of the allegations contained in paragraphs 112 of the Plaintiff's Complaint.

113.    The Defendant neither admits nor denies the allegations contained in paragraph 113 of the Plaintiff's Complaint since the Defendant does not possess specific knowledge of the allegations contained in paragraphs 113 of the Plaintiff's Complaint.

114.    The Defendant neither admits nor denies the allegations contained in paragraph 114 of the Plaintiff's Complaint since the Defendant does not possess specific knowledge of the allegations contained in paragraphs 114 of the Plaintiff's Complaint.

115.    The Defendant neither admits nor denies the allegations contained in paragraph 115 of the Plaintiff's Complaint since the Defendant does not possess specific knowledge of the allegations contained in paragraphs 115 of the Plaintiff's Complaint.

116.    The Defendant neither admits nor denies the allegations contained in paragraph 116 of the Plaintiff's Complaint since the Defendant does not possess specific knowledge of the allegations contained in paragraphs 116 of the Plaintiff's Complaint.

117.    The Defendant neither admits nor denies the allegations contained in paragraph 117 of the Plaintiff's Complaint since the Defendant does not

FILED DATE: 5/21/2020 10:33 AM   2020CH04183

possess specific knowledge of the allegations contained in paragraphs 117 of the Plaintiff's Complaint.

## CLAIMS FOR RELIEF

### COUNT I - AGAINST ALL DEFENDANTS
### CONSUMER FRAUD - UNFAIR PRACTICES
### VIOLATION OF MCC § 2-25-090

118.　The Defendant incorporates their answers in the proceeding paragraphs answered in the Plaintiff's Complaint.

119.　The Defendant admits the allegations contained in paragraph 119 of the Plaintiff's Complaint.

120.　The Defendant denies each and every allegation contained in paragraph 120 of the Plaintiff's Complaint.

121.　The Defendant neither admits nor denies the allegations contained in paragraph 121 of the Plaintiff's Complaint since the Defendant does not possess specific knowledge of the allegations contained in paragraphs 121 of the Plaintiff's Complaint.

122.　The Defendant denies the allegations contained in paragraph 122 of the Plaintiff's Complaint.

123.　The Defendant admits that the Plaintiff recited the correct statutory authority, but the Defendant neither admits nor denies the remaining allegations contained in paragraph 123 of the Plaintiff's Complaint since the Defendant does not possess specific knowledge of the allegations contained in paragraphs 123 of the Plaintiff's Complaint.

124.　The Defendant admits that the statutory authority is correctly recited in paragraph 124 , but denies the remaining allegations contained in paragraph 124.

### COUNT II - AGAINST ALL DEFENDANTS
### VIOLATION OF MCC § 4-64-345

125.　The Defendant incorporates their answers to the Plaintiff's Complaint which

has previously been responded to by the Defendant.

126.    The Defendant admits the allegations contained in paragraph 126 of the Plaintiff's Complaint.

127.    The Defendant denies the allegations contained in paragraph 127 of the Plaintiff's Complaint.

128.    The Defendant denies the allegations that the Plaintiff is entitled to any and all fines against the Defendant concerning their alleged violations of the MCC.

**COUNT III - AGAINST JUUL**
**CONSUMER FRAUD - DECEPTIVE PRACTICES**
**VIOLATION OF MCC § 2-25-090**

The Defendant is not answering Count III of the Plaintiff's Complaint since Count III since it is not directed towards the Defendant.

WHEREFORE, the Defendant prays that this Honorable Court dismiss the Complaint directed toward the Defendant and award the Defendant his reasonable attorney fees and cost in defending this action.

Steven L. Venit
Attorney for Leah Mol, Inc.

Steven L. Venit
3240 W. Irving Park Rd.
Chicago, IL. 60618
773-477-9998
vmattk@aol.com
Attorney No.: 54791

-11-

FILED DATE: 5/21/2020 10:33 AM 2020CH04183

 **CT Corporation**

**Service of Process Transmittal**
08/21/2020
CT Log Number 538133545

**TO:**     Juul Labs
Juul Labs, Inc.
1000 ILLINOIS ST
SAN FRANCISCO, CA 94107-3120

**RE:**     **Process Served in Illinois**

**FOR:**    Juul Labs Inc  (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | S CITY OF CHICAGO, ETC., PLTF. vs. JUUL LABS, INC., ET AL., DFTS. |
| **DOCUMENT(S) SERVED:** | - |
| **COURT/AGENCY:** | None Specified<br>Case # 2020CH04183 |
| **ON WHOM PROCESS WAS SERVED:** | The Corporation Company, Springfield, IL |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 08/21/2020 at 14:56 |
| **JURISDICTION SERVED :** | Illinois |
| **APPEARANCE OR ANSWER DUE:** | None Specified |
| **ATTORNEY(S) / SENDER(S):** | None Specified |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 08/21/2020, Expected Purge Date: 08/26/2020 |
| | Image SOP |
| | Email Notification,  Juul Labs  sop@juul.com |
| **SIGNED:**<br>**ADDRESS:** | The Corporation Company<br>208 LaSalle Ave<br>Suite 814<br>Chicago, IL 60604 |
| **For Questions:** | 866-539-8692<br>CorporationTeam@wolterskluwer.com |

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

 Wolters Kluwer

# PROCESS SERVER DELIVERY DETAILS

**Date:**               Fri, Aug 21, 2020

**Server Name:**        Sheriff Drop

**Location:**           chicago, IL-CHI

| | |
|---|---|
| Entity Served | JUUL LABS, INC. |
| Agent Name | INCORP SERVICE INC |
| Case Number | 2020CH04183 |
| Jurisdiction | IL-CHI |



Hearing Date: 9/11/2020 9:30 AM - 9:30 AM
Courtroom Number: 2408
Location: District 1 Court
Cook County, IL

FILED
8/4/2020 10:12 AM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2020CH04183

9984480

FILED DATE: 8/4/2020 10:12 AM   2020CH04183

| | |
|---|---|
| 2120 - Served | 2121 - Served |
| 2220 - Not Served | 2221 - Not Served |
| 2320 - Served By Mail | 2321 - Served By Mail |
| 2420 - Served By Publication | 2421 - Served By Publication |
| Summons - Alias Summons | (08/01/18) CCG 0001 A |

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

CITY OF CHICAGO

(Name all parties)

v.

Case No. 2020CH04183

JUUL Labs, Inc., Leah Mol Inc., d/b/a Rog Mobil, 2550 Pulaski Business, Inc. d/b/a Mobil
4901 Central Inc. d/b/a Mobil, T and M Gas, Inc. d/b/a Shell, and Irving Shell Gas and Food, Inc.

☐ SUMMONS ☒ ALIAS SUMMONS

To each Defendant:

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance and pay the required fee **within thirty (30) days after service of this Summons,** not counting the day of service. To file your answer or appearance you need access to the internet. Please visit www.cookcountyclerkofcourt.org to initiate this process. Kiosks with internet access are available at all Clerk's Office locations. Please refer to the last page of this document for location information.

**If you fail to do so, a judgment by default may be entered against you for the relief requested in the complaint.**

To the Officer:

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than thirty (30) days after its date.

**Dorothy Brown, Clerk of the Circuit Court of Cook County, Illinois**
**cookcountyclerkofcourt.org**
Page 1 of 3

Summons - Alias Summons                                    (08/01/18) CCG 0001 B

**E-filing is now mandatory for documents in civil cases with limited exemptions. To e-file, you must first create an account with an e-filing service provider. Visit http://efile.illinoiscourts.gov/service-providers.htm to learn more and to select a service provider. If you need additional help or have trouble e-filing, visit http://www.illinoiscourts.gov/FAQ/gethelp.asp, or talk with your local circuit clerk's office.**

FILED DATE: 8/4/2020 10:12 AM  2020CH04183

Atty. No.:  90909

Atty Name:  Stephen J. Kane

Atty. for:  City of Chicago

Address:  121 North LaSalle Street, Room 600

City:  Chicago

State:  IL   Zip:  60602

Telephone:  (312) 744-6934

Primary Email:  stephen.kane@cityofchicago.org

Witness: _____

8/4/2020 10:12 AM DOROTHY BROWN

DOROTHY BROWN, Clerk of Court

Date of Service: _____
(To be inserted by officer on copy left with Defendant or other person):

**Dorothy Brown, Clerk of the Circuit Court of Cook County, Illinois**
**cookcountyclerkofcourt.org**

## CLERK OF THE CIRCUIT COURT OF COOK COUNTY OFFICE LOCATIONS

FILED DATE: 8/4/2020 10:12 AM  2020CH04183

Richard J Daley Center
50 W Washington
Chicago, IL 60602

District 2 - Skokie
5600 Old Orchard Rd
Skokie, IL 60077

District 3 - Rolling Meadows
2121 Euclid
Rolling Meadows, IL 60008

District 4 - Maywood
1500 Maybrook Ave
Maywood, IL 60153

District 5 - Bridgeview
10220 S 76th Ave
Bridgeview, IL 60455

District 6 - Markham
16501 S Kedzie Pkwy
Markham, IL 60428

Domestic Violence Court
555 W Harrison
Chicago, IL 60607

Juvenile Center Building
2245 W Ogden Ave, Rm 13
Chicago, IL 60602

Criminal Court Building
2650 S California Ave, Rm 526
Chicago, IL 60608

### Daley Center Divisions/Departments

Civil Division
Richard J Daley Center
50 W Washington, Rm 601
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

Chancery Division
Richard J Daley Center
50 W Washington, Rm 802
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

Domestic Relations Division
Richard J Daley Center
50 W Washington, Rm 802
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

Civil Appeals
Richard J Daley Center
50 W Washington, Rm 801
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

Criminal Department
Richard J Daley Center
50 W Washington, Rm 1006
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

County Division
Richard J Daley Center
50 W Washington, Rm 1202
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

Probate Division
Richard J Daley Center
50 W Washington, Rm 1202
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

Law Division
Richard J Daley Center
50 W Washington, Rm 801
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

Traffic Division
Richard J Daley Center
50 W Washington, Lower Level
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

Return Date: No return date scheduled
Hearing Date: No hearing scheduled
Courtroom Number: No hearing scheduled
Location: No hearing scheduled

FILED
6/17/2020 9:37 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2020CH04183

9514497

FILED DATE: 6/17/2020 9:37 PM  2020CH04183

| | |
|---|---|
| 2120 - Served | 2121 - Served |
| 2220 - Not Served | 2221 - Not Served |
| 2320 - Served By Mail | 2321 - Served By Mail |
| 2420 - Served By Publication | 2421 - Served By Publication |
| Summons - Alias Summons | (08/01/18) CCG 0001 A |

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

CITY OF CHICAGO
_____
(Name all parties)

Case No.  2020CH04183

v.

JUUL Labs, Inc., Leah Mol Inc., d/b/a Rog Mobill, 2550 Pulaski Business, Inc. d/b/a Mobil,
4901 Central Inc. d/b/a Mobil, T and M Gas, Inc. d/b/a Shell, and Irving Shell Gas and Food, Inc.

☐ **SUMMONS**   ☑ **ALIAS SUMMONS**

To each Defendant:

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance and pay the required fee **within thirty (30) days after service of this Summons**, not counting the day of service. To file your answer or appearance you need access to the internet. Please visit www.cookcountyclerkofcourt.org to initiate this process. Kiosks with internet access are available at all Clerk's Office locations. Please refer to the last page of this document for location information.

**If you fail to do so, a judgment by default may be entered against you for the relief requested in the complaint.**

To the Officer:

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than thirty (30) days after its date.

**Dorothy Brown, Clerk of the Circuit Court of Cook County, Illinois**
**cookcountyclerkofcourt.org**

**Summons - Alias Summons**                                    **(08/01/18) CCG 0001 B**

E-filing is now mandatory for documents in civil cases with limited exemptions. To e-file, you must first create an account with an e-filing service provider. Visit http://efile.illinoiscourts.gov/service-providers.htm to learn more and to select a service provider. If you need additional help or have trouble e-filing, visit http://www.illinoiscourts.gov/FAQ/gethelp.asp, or talk with your local circuit clerk's office.

Atty. No.: 90909

Atty Name: Stephen J. Kane

Atty. for: City of Chicago

Address: 121 North LaSalle Street, Room 600

City: Chicago

State: IL    Zip: 60602

Telephone: (312) 744-6934

Primary Email: stephen.kane@cityofchicago.org

Witness: 6/17/2020 9:37 PM DOROTHY BROWN

DOROTHY BROWN, Clerk of Court

Date of Service: 
(To be inserted by officer on copy left with Defendant or other person):

**Dorothy Brown, Clerk of the Circuit Court of Cook County, Illinois**

## CLERK OF THE CIRCUIT COURT OF COOK COUNTY OFFICE LOCATIONS

FILED DATE: 6/17/2020 9:37 PM   2020CH04183

○ Richard J Daley Center
50 W Washington
Chicago, IL 60602

○ District 2 - Skokie
5600 Old Orchard Rd
Skokie, IL 60077

○ District 3 - Rolling Meadows
2121 Euclid
Rolling Meadows, IL 60008

○ District 4 - Maywood
1500 Maybrook Ave
Maywood, IL 60153

○ District 5 - Bridgeview
10220 S 76th Ave
Bridgeview, IL 60455

○ District 6 - Markham
16501 S Kedzie Pkwy
Markham, IL 60428

○ Domestic Violence Court
555 W Harrison
Chicago, IL 60607

○ Juvenile Center Building
2245 W Ogden Ave, Rm 13
Chicago, IL 60602

○ Criminal Court Building
2650 S California Ave, Rm 526
Chicago, IL 60608

**Daley Center Divisions/Departments**

○ Civil Division
Richard J Daley Center
50 W Washington, Rm 601
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

⊙ Chancery Division
Richard J Daley Center
50 W Washington, Rm 802
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

○ Domestic Relations Division
Richard J Daley Center
50 W Washington, Rm 802
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

○ Civil Appeals
Richard J Daley Center
50 W Washington, Rm 801
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

○ Criminal Department
Richard J Daley Center
50 W Washington, Rm 1006
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

○ County Division
Richard J Daley Center
50 W Washington, Rm 1202
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

○ Probate Division
Richard J Daley Center
50 W Washington, Rm 1202
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

○ Law Division
Richard J Daley Center
50 W Washington, Rm 801
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

○ Traffic Division
Richard J Daley Center
50 W Washington, Lower Level
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

**Dorothy Brown, Clerk of the Circuit Court of Cook County, Illinois**
**cookcountyclerkofcourt.org**

```
CIRCUIT COURT OF COOK COUNTY
CHANCERY DIV., RM 802 DALEY CTR
CHICAGO, IL. 60602


ID: CH2020CH04183    20200804000009
TO: VENIT STEVEN L
AT: VMATTK@AOL.COM


          * * * * * N O T I C E * * * * *
                CASE  20-CH-04183
                CALENDAR  04

     CITY OF CHICAGO       V.      JUUL LABS, INC.
     THERE WILL BE A CASE MANAGEMENT CALL OF YOUR CASE ON FRIDAY
     THE 11TH  DAY OF SEPTEMBER 2020 IN ROOM 2408 AT  9:30 A.M.
     RICHARD J. DALEY CENTER, CHICAGO, IL. 60602.
     * * * *  YOU MUST APPEAR OR AN APPROPRIATE ORDER * * * *
     * * * *  MAY BE ENTERED AFFECTING YOUR RIGHTS  * * * *
     NOTE: IF THIS CASE HAS BEEN ALREADY DISMISSED OR IF THIS CASE
     HAS A COURT DATE SET BY COURT ORDER, YOU MAY DISREGARD THIS
                          NOTICE
```

Hearing Date: No hearing scheduled
Courtroom Number: No hearing scheduled
Location: No hearing scheduled

FILED
8/4/2020 10:12 AM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2020CH04183

9984480

| 2120 - Served | 2121 - Served |
|---|---|
| 2220 - Not Served | 2221 - Not Served |
| 2320 - Served By Mail | 2321 - Served By Mail |
| 2420 - Served By Publication | 2421 - Served By Publication |
| Summons - Alias Summons | (08/01/18) CCG 0001 A |

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

CITY OF CHICAGO

(Name all parties)       Case No.  2020CH04183

v.

JUUL Labs, Inc., Leah Mol Inc., d/b/a Rog Mobil, 2550 Pulaski Business, Inc. d/b/a Mobil
4901 Central Inc. d/b/a Mobil, T and M Gas, Inc. d/b/a Shell, and Irving Shell Gas and Food, Inc.

☐ SUMMONS   ☑ ALIAS SUMMONS

To each Defendant:

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance and pay the required fee **within thirty (30) days after service of this Summons**, not counting the day of service. To file your answer or appearance you need access to the internet. Please visit www.cookcountyclerkofcourt.org to initiate this process. Kiosks with internet access are available at all Clerk's Office locations. Please refer to the last page of this document for location information.

**If you fail to do so, a judgment by default may be entered against you for the relief requested in the complaint.**

To the Officer:

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than thirty (30) days after its date.

**Dorothy Brown, Clerk of the Circuit Court of Cook County, Illinois**

**cookcountyclerkofcourt.org**

FILED DATE: 8/4/2020 10:12 AM   2020CH04183

**Summons - Alias Summons**          **(08/01/18) CCG 0001 B**

E-filing is now mandatory for documents in civil cases with limited exemptions. To e-file, you must first create an account with an e-filing service provider. Visit http://efile.illinoiscourts.gov/service-providers.htm to learn more and to select a service provider. If you need additional help or have trouble e-filing, visit http://www.illinoiscourts.gov/FAQ/gethelp.asp, or talk with your local circuit clerk's office.

Atty. No.: 90909

Atty Name: Stephen J. Kane

Atty. for: City of Chicago

Address: 121 North LaSalle Street, Room 600

City: Chicago

State: IL    Zip: 60602

Telephone: (312) 744-6934

Primary Email: stephen.kane@cityofchicago.org

Witness: _____

8/4/2020 10:12 AM DOROTHY BROWN

DOROTHY BROWN, Clerk of Court

Date of Service: _____
(To be inserted by officer on copy left with Defendant or other person):

FILED DATE: 8/4/2020 10:12 AM 2020CH04183

# CLERK OF THE CIRCUIT COURT OF COOK COUNTY OFFICE LOCATIONS

FILED DATE: 8/4/2020 10:12 AM   2020CH04183

Richard J Daley Center
50 W Washington
Chicago, IL 60602

District 2 - Skokie
5600 Old Orchard Rd
Skokie, IL 60077

District 3 - Rolling Meadows
2121 Euclid
Rolling Meadows, IL 60008

District 4 - Maywood
1500 Maybrook Ave
Maywood, IL 60153

District 5 - Bridgeview
10220 S 76th Ave
Bridgeview, IL 60455

District 6 - Markham
16501 S Kedzie Pkwy
Markham, IL 60428

Domestic Violence Court
555 W Harrison
Chicago, IL 60607

Juvenile Center Building
2245 W Ogden Ave, Rm 13
Chicago, IL 60602

Criminal Court Building
2650 S California Ave, Rm 526
Chicago, IL 60608

## Daley Center Divisions/Departments

Civil Division
Richard J Daley Center
50 W Washington, Rm 601
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

Chancery Division
Richard J Daley Center
50 W Washington, Rm 802
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

Domestic Relations Division
Richard J Daley Center
50 W Washington, Rm 802
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

Civil Appeals
Richard J Daley Center
50 W Washington, Rm 801
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

Criminal Department
Richard J Daley Center
50 W Washington, Rm 1006
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

County Division
Richard J Daley Center
50 W Washington, Rm 1202
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

Probate Division
Richard J Daley Center
50 W Washington, Rm 1202
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

Law Division
Richard J Daley Center
50 W Washington, Rm 801
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

Traffic Division
Richard J Daley Center
50 W Washington, Lower Level
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm



**SHERIFF'S OFFICE OF COOK COUNTY**
**AFFIDAVIT OF SERVICE**

**CASE NUMBER:** 2020CH04183  **SHERIFF NUMBER:** 03365788  **MULT. SER.:** 1  **DOC. TYPE:** CHAN

**DIE DATE:** 08/28/2020  **RECEIVED DATE:** 08/04/2020  **FILED DATE:** 08/04/2020  **DIST:** 630

| | |
|---|---|
| **DEFENDANT:** 4901 CENTRAL INC | **PLAINTIFF:** CITY OF CHICAGO |
| **ADDRESS:** 4409 N CENTRAL | **ATTORNEY:** KANE, STEPHEN J |
| **CITY:** CHICAGO | **ADDRESS:** 4409 N LASALLE ST RM 600 |
| **STATE:** IL  **ZIP CODE:** 60630 | **CITY:** CHICAGO |
| **ATTACHED FEE AMT:** | **STATE:** IL  **ZIP CODE:** 60602 |
| **SERVICE INFORMATION:** C O GEORGE URBIETA | |

**I CERTIFY THAT I SERVED THE DEFENDANT/RESPONDENT AS FOLLOWS:**

☐ **(1) PERSONAL SERVICE:** BY LEAVING A COPY OF THE WRIT/ORDER WITH THE DEFENDANT/RESPONDENT PERSONALLY, AND INFORMING DEFENDANT/RESPONDENT OF CONTENTS.

☐ **(2) SUBSTITUTE SERVICE:** BY LEAVING A COPY OF THE SUMMONS AND COMPLAINT AT THE DEFENDANT'S USUAL PLACE OF ABODE WITH A FAMILY MEMBER OR PERSON RESIDING THERE, 13 YEARS OR OLDER, AND INFORMING THAT PERSON OF THE CONTENTS OF THE SUMMONS. ALSO, A COPY OF THE SUMMONS WAS MAILED TO THE DEFENDANT AT HIS OR HER USUAL PLACE OF ABODE ON THE  DAY OF _  20.

☐ **(3) UNKNOWN OCCUPANTS:** BY LEAVING A COPY OF THE SUMMONS AND COMPLAINT NAMING "UNKNOWN OCCUPANTS" WITH A PERSON OF THE AGE OF 13 OR UPWARDS OCCUPYING SAID PREMISE.

☑ **(4) CORP/CO/BUS/PART:** BY LEAVING THE APPROPRIATE NUMBER OF COPIES OF THE SUMMONS, COMPLAINTS, INTERROGATORIES, JUDGMENTS, CERTIFICATIONS AND NOTICES WITH THE REGISTERED AGENT, AUTHORIZED PERSON OR PARTNER OF THE DEFENDANT CORPORATION____COMPANY____BUSINESS _____ PARTNERSHIP ___

☐ **(5) PROPERTY RECOVERED:** NO ONE PRESENT TO RECEIVE ORDER OF COURT. ORDER POSTED IN PLAIN VIEW.

☐ **(6) S.O.S/D.O.I.:** BY LEAVING THE SUMMONS AND COMPLAINT WITH THE SECRETARY OF THE STATE/DIRECTOR OF INSURANCE OF THE STATE OF ILLINOIS, AN AGENT OF SAID DEFENDANT LISTED ABOVE. ANY AGENT OF SAID CORPORATION NOT FOUND IN THE COUNTY OF COOK.

☐ **(7) CERTIFIED MAIL**
   **\*\*\*\* COMPLETE THIS SECTION IF WRIT IS A THIRD PARTY CITATION/GARNISHMENT \*\*\*\***

☐ **(8)** AND BY MAILING ON THE ___ DAY OF _____ 20 _____ A COPY OF THE THIRD PARTY GARNISHMENT/CITATON SUMMONS AND NOTICE TO THE JUDGMENT DEBTOR'S LAST KNOWN ADDRESS AS INDICATED IN THE NOTICE WITHIN (2) BUSINESS DAYS OF SERVICE UPON GARNISHEE/THIRD PARTY DEFENDANT.

**THE NAMED DEFENDANT WAS NOT SERVED FOR THE GIVEN REASON BELOW:**

| | | |
|---|---|---|
| ☐ (01) NO CONTACT | ☐ (05) WRONG ADDRESS | ☐ (09) DECEASED |
| ☐ (02) MOVED | ☐ (06) NO SUCH ADDRESS | ☐ (10) NO REGISTED AGENT |
| ☐ (03) EMPTY LOT | ☐ (07) EMPLOYER REFUSAL | ☐ (11) OUT OF COOK COUNTY |
| ☐ (04) NOT LISTED | ☐ (08) CANCELLED BY PLAINTIFF ATTY | ☐ (12) OTHER REASON (EXPLAIN) |

**EXPLANATION:**

**WRIT SERVED ON:** ANA MORAN                    ATTEMPTED SERVICES

**SEX:** F  **RACE:** HP  **AGE:** 38            Date      Time      Star #

**THIS** 18 **DAY OF** August 20 20

**TIME:** 10:00 AM

THOMAS J. DART,

SHERIFF, BY: /S/  ROSADO, ELDIN #10506          , DEPUTY



**SHERIFF'S OFFICE OF COOK COUNTY**
**AFFIDAVIT OF SERVICE**

**CASE NUMBER:** 2020CH04183 **SHERIFF NUMBER:** 03365788 **MULT. SER.:** 1 **DOC. TYPE:** CHAN

**DIE DATE:** 08/28/2020 **RECEIVED DATE:** 08/04/2020 **FILED DATE:** 08/04/2020 **DIST:** 630

|  Date | Time | Star # |
|---|---|---|



**SHERIFF'S OFFICE OF COOK COUNTY**
**AFFIDAVIT OF SERVICE**

**CASE NUMBER:** 2020CH04183   **SHERIFF NUMBER:** 03365791   **MULT. SER.:** 1   **DOC. TYPE:** CHAN

**DIE DATE:** 08/28/2020   **RECEIVED DATE:** 08/04/2020   **FILED DATE:** 08/04/2020   **DIST:** 634

| | |
|---|---|
| **DEFENDANT:** ITVING SHELL GAS AND FOOD INC | **PLAINTIFF:** CITY OF CHICAGO |
| **ADDRESS:** 6747 W IRVING PARK | **ATTORNEY:** KANE, STEPHEN J |
| **CITY:** CHICAGO | **ADDRESS:** 6747 N LASALLE ST RM 600 |
| **STATE:** IL   **ZIP CODE:** 60634 | **CITY:** CHICAGO |
| **ATTACHED FEE AMT:** | **STATE:** IL   **ZIP CODE:** 60602 |
| **SERVICE INFORMATION:** C O MOHAMMAD YASEEN MOTLAMI | |

**I CERTIFY THAT I SERVED THE DEFENDANT/RESPONDENT AS FOLLOWS:**

☐ **(1) PERSONAL SERVICE:** BY LEAVING A COPY OF THE WRIT/ORDER WITH THE DEFENDANT/RESPONDENT PERSONALLY, AND INFORMING DEFENDANT/RESPONDENT OF CONTENTS.

☐ **(2) SUBSTITUTE SERVICE:** BY LEAVING A COPY OF THE SUMMONS AND COMPLAINT AT THE DEFENDANT'S USUAL PLACE OF ABODE WITH A FAMILY MEMBER OR PERSON RESIDING THERE, 13 YEARS OR OLDER, AND INFORMING THAT PERSON OF THE CONTENTS OF THE SUMMONS. ALSO, A COPY OF THE SUMMONS WAS MAILED TO THE DEFENDANT AT HIS OR HER USUAL PLACE OF ABODE ON THE DAY OF _ 20.

☐ **(3) UNKNOWN OCCUPANTS:** BY LEAVING A COPY OF THE SUMMONS AND COMPLAINT NAMING "UNKNOWN OCCUPANTS" WITH A PERSON OF THE AGE OF 13 OR UPWARDS OCCUPYING SAID PREMISE.

☑ **(4) CORP/CO/BUS/PART:** BY LEAVING THE APPROPRIATE NUMBER OF COPIES OF THE SUMMONS, COMPLAINTS, INTERROGATORIES, JUDGMENTS, CERTIFICATIONS AND NOTICES WITH THE REGISTERED AGENT, AUTHORIZED PERSON OR PARTNER OF THE DEFENDANT CORPORATION____COMPANY____BUSINESS _____PARTNERSHIP ___

☐ **(5) PROPERTY RECOVERED:** NO ONE PRESENT TO RECEIVE ORDER OF COURT. ORDER POSTED IN PLAIN VIEW.

☐ **(6) S.O.S/D.O.I.:** BY LEAVING THE SUMMONS AND COMPLAINT WITH THE SECRETARY OF THE STATE/DIRECTOR OF INSURANCE OF THE STATE OF ILLINOIS, AN AGENT OF SAID DEFENDANT LISTED ABOVE. ANY AGENT OF SAID CORPORATION NOT FOUND IN THE COUNTY OF COOK.

☐ **(7) CERTIFIED MAIL**

**\*\*\*\* COMPLETE THIS SECTION IF WRIT IS A THIRD PARTY CITATION/GARNISHMENT \*\*\*\***

☐ **(8)** AND BY MAILING ON THE ___ DAY OF _____ 20 _____ A COPY OF THE THIRD PARTY GARNISHMENT/CITATON SUMMONS AND NOTICE TO THE JUDGMENT DEBTOR'S LAST KNOWN ADDRESS AS INDICATED IN THE NOTICE WITHIN (2) BUSINESS DAYS OF SERVICE UPON GARNISHEE/THIRD PARTY DEFENDANT.

**THE NAMED DEFENDANT WAS NOT SERVED FOR THE GIVEN REASON BELOW:**

☐ (01) NO CONTACT   ☐ (05) WRONG ADDRESS   ☐ (09) DECEASED
☐ (02) MOVED   ☐ (06) NO SUCH ADDRESS   ☐ (10) NO REGISTED AGENT
☐ (03) EMPTY LOT   ☐ (07) EMPLOYER REFUSAL   ☐ (11) OUT OF COOK COUNTY
☐ (04) NOT LISTED   ☐ (08) CANCELLED BY PLAINTIFF ATTY   ☐ (12) OTHER REASON (EXPLAIN)

**EXPLANATION:**

WRIT SERVED ON:   MIGUEL RAMOS                                    ATTEMPTED SERVICES

SEX: M   RACE: HP   AGE: 40                           Date        Time        Star #

THIS 25 DAY OF August 20 20

TIME: 6:50 PM

THOMAS J. DART,

SHERIFF, BY: /S/   PAPANICOLAOU, PETE #10959          , DEPUTY



**SHERIFF'S OFFICE OF COOK COUNTY**
**AFFIDAVIT OF SERVICE**

**CASE NUMBER:** 2020CH04183    **SHERIFF NUMBER:** 03365791    **MULT. SER.:** 1    **DOC. TYPE:** CHAN

**DIE DATE:** 08/28/2020    **RECEIVED DATE:** 08/04/2020    **FILED DATE:** 08/04/2020    **DIST:** 634

| Date | Time | Star # |
|------|------|--------|

**Notice and Acknowledgment of**
**Receipt of Summons and Complaint**                    **(10/12/18) CCG 0063 A**

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

_____

Plaintiff(s) | Case No. _____

vs.

Defendant(s)
_____ | Amount Claimed:   $ _____

Defendant(s)

### NOTICE AND ACKNOWLEDGMENT OF RECEIPT OF SUMMONS AND COMPLAINT

To: _____   Address: _____
        (Name)

City: _____   State: _____   Zip: _____

The enclosed summons and complaint are served pursuant to section 2--213 of the Code of Civil Procedure.

You must complete the acknowledgment part of this form and return one copy of the completed

form to the sender within _____ * days.

You must sign and date the acknowledgment. If you are served on behalf of a corporation, unincorporated association (including a partnership), or other entity, you must indicate under your signature your relationship to that entity. If you are served on behalf of another person and you are authorized to receive process, you must indicate under your signature your authority.

If you do not complete and return the form to the sender within _____ * days, you (or the party on whose behalf you are being served) may be served a summons and complaint in any other manner permitted by law.

If you do complete and return this form, you (or the party on whose behalf you are being served)

must answer the complaint within _____ ** days. If you fail to do so, judgment by default

will be taken against you for the relief demanded in the complaint.

I declare, under penalty of perjury, that this notice and acknowledgment of receipt of summons and

complaint will have been mailed on _____ .

**Dorothy Brown, Clerk of the Circuit Court of Cook County, Illinois**

**cookcountyclerkofcourt.org**

**Notice and Acknowledgment of**
**Receipt of Summons and Complaint**                     **(10/12/18) CCG 0063 B**

E-filing is now mandatory for documents in civil cases with limited exemptions. To
e-file, you must first create an account with an e-filing service provider. Visit http://efile.
illinoiscourts.gov/service-providers.htm to learn more and to select a service provider. If
you need additional help or have trouble e-filing, visit http://www.illinoiscourts.gov/FAQ/
gethelp.asp.

### ACKNOWLEDGMENT OF RECEIPT OF SUMMONS AND COMPLAINT

I declare, under penalty of perjury, that I received a copy of the summons and of the complaint in
the above captioned matter at:

(Please print or type)

Name: _Andrew McGaan_

Address: _300 N. LaSalle_

City: _Chicago_            State: _IL_   Zip: _60654_

Email: _andrew.mcgaan@kirkland.com_

Relationship to Entity/Authority to Receive Service of Process: _Outside Counsel_

(Not applicable if your are the named Defendant or Respondent.)

Dated:    _08/26/2020_

                                    _/s/ Andrew McGaan_
                                    Signature

\*   (To be completed by the person sending the notice.) Date for return of waiver must be at least 30 days from the date
    on which the request is sent, or 60 days if the defendant is addressed outside the United States.

\*\*  (To be completed by the person sending the notice.) Date for answering complaint must be at least 60 days from the
    date on which the request is sent, or 90 days if the defendant is addressed outside the United States.

**Dorothy Brown, Clerk of the Circuit Court of Cook County, Illinois**
**cookcountyclerkofcourt.org**

Hearing Date: 9/11/2020 9:30 AM - 9:30 AM
Courtroom Number: 2408
Location: District 1 Court
    Cook County, IL

FILED
9/4/2020 9:50 AM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2020CH04183

10345673

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, CHANCERY DIVISION**

| | |
|---|---|
| CITY OF CHICAGO, | ) |
| | ) |
| a municipal corporation, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| JUUL LABS, INC., | ) |
| LEAH MOL INC. D/B/A ROG MOBIL, | ) |
| 2550 PULASKI BUSINESS, INC. D/B/A MOBIL, | ) |
| 4901 CENTRAL INC. D/B/A MOBIL, | ) |
| T AND M GAS, INC. D/B/A SHELL, and | ) |
| IRVING SHELL GAS AND FOOD, INC., | ) |
| | ) |
| Defendants. | ) |

Case No. 2020CH04183

**VERIFIED STATEMENT OF OUT-OF-STATE ATTORNEY PURSUANT TO**
**SUPREME COURT RULE 707**

I, Mimi Liu, submit this Verified Statement pursuant to Illinois Supreme Court Rule 707.

1.      My full name is Mimi Yun-Choo Liu, my date of birth is May 1, 1974.  The address of offices from which I practice law and related email address and telephone numbers are as follows:

MOTLEY RICE LLC
401 9TH ST NW, SUITE 1001
WASHINGTON DC, 20004
TELEPHONE: 202.386.9625
EMAIL: MLIU@MOTLEYRICE.COM

2.      I represent the City of Chicago in Case No. 2020CH04183, Circuit Court of Cook County.

3(a).    I have not filed any other appearance pursuant to this rule during this calendar year.

3(b).    I have not received a registration number from the ARDC.

FILED DATE: 9/4/2020 9:50 AM    2020CH04183

FILED DATE: 9/4/2020 9:50 AM  2020CH04183

4(a).    I list each jurisdiction of admission, including any state, territory, or commonwealth of the United States, the District of Columbia, or in a foreign country, and my full admission name and license number.

| Jurisdiction | Admission Name | License Number |
|---|---|---|
| New York | Mimi Liu | 3896123 |
| Washington, DC | Mimi Liu | 472382 |

4(b).    I attach a letter or certificate of good standing for each of the jurisdictions listed in paragraph 4(a) above.

5.    I have no office or other presence in Illinois for the practice of law.

6.    I submit to the disciplinary authority of the Supreme Court of Illinois.

7.    I have undertaken to become familiar with and to comply, as if admitted to practice in Illinois, with the rules of the Supreme Court of Illinois, including the Illinois Rules of Professional Conduct and the Supreme Court Rules on Admission and Discipline of Attorneys, and other Illinois law and practices that pertain to the proceeding.

8.    The full name, business address and ARDC number of the Illinois attorney with whom I have associated in the matter is:

Stephen J. Kane (ARDC # 6272490)
Deputy Corporation Counsel
Affirmative Litigation Division
City of Chicago Department of Law
121 North LaSalle Street, Room 600
Chicago, Illinois 60602
(312) 744-6934
stephen.kane@cityofchicago.org

9.    I certify that I have served this Statement upon Defendants JUUL Labs, Inc., Leah Mol, Inc. doing business as Rog Mobil, 2550 Pulaski Business, Inc. doing business as Mobil, 4901

Central Inc. doing business as Mobil, T and M Gas, Inc. doing business as Shell, and Irving Shell Gas and Food, Inc. and/or their counsel and that these parties are all entitled to service under this rule.

<u>Verification</u>

I verify the accuracy and completeness of each of the above statements.

Mimi Liu
401 9th Street NW, Suite 1001
Washington, D.C. 20004
Telephone: 202.386.9625
Facsimile: 202.386.9622
mliu@motleyrice.com

FILED DATE: 9/4/2020 9:50 AM    2020CH04183

3

FILED DATE: 9/4/2020 9:50 AM  2020CH04183



On behalf of JULIO A. CASTILLO, Clerk of the District of Columbia Court of Appeals, the District of Columbia Bar does hereby certify that

*Mimi YC Liu*

was duly qualified and admitted on May 11, 2001 as an attorney and counselor entitled to practice before this Court; and is, on the date indicated below, an Active member in good standing of this Bar.

**In Testimony Whereof,
I have hereunto subscribed my
name and affixed the seal of this
Court at the City of
Washington, D.C., on April 1,
2020.**

**JULIO A. CASTILLO
Clerk of the Court**

Issued By:
District of Columbia Bar Membership

For questions or concerns, please contact the D.C. Bar Membership Office at 202-626-3475 or email memberservices@dcbar.org.

FILED DATE: 9/4/2020 9:50 AM  2020CH04183

# Appellate Division of the Supreme Court
## of the State of New York
## First Judicial Department

I, Susanna Rojas, Clerk of the Appellate Division of the Supreme Court of the State of New York, First Judicial Department, certify that

# Mimi Yun-Choo Liu

was duly licensed and admitted to practice as an Attorney and Counsellor at Law in all the courts of the State of New York on October 3, 2000, has duly taken and subscribed the oath of office prescribed by law, has been enrolled in the Roll of Attorneys and Counsellors at Law on file in my office, has duly registered with the administrative office of the courts, and according to the records of this court is in good standing as an attorney and counsellor at law.

In Witness Thereof, I have hereunto set my hand and affixed the seal of this court on May 15, 2020

Clerk of the Court

3877

Hearing Date: 9/11/2020 9:30 AM - 9:30 AM
Courtroom Number: 2408
Location: District 1 Court
    Cook County, IL

FILED
9/4/2020 9:50 AM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2020CH04183

10345673

FILED DATE: 9/4/2020 9:50 AM    2020CH04183

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

| | |
|---|---|
| CITY OF CHICAGO, | ) |
| | ) |
| a municipal corporation, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| JUUL LABS, INC., | ) |
| LEAH MOL INC. D/B/A ROG MOBIL, | ) |
| 2550 PULASKI BUSINESS, INC. D/B/A MOBIL, | ) |
| 4901 CENTRAL INC. D/B/A MOBIL, | ) |
| T AND M GAS, INC. D/B/A SHELL, and | ) |
| IRVING SHELL GAS AND FOOD, INC., | ) |
| | ) |
| Defendants. | ) |

Case No. 2020CH04183

## VERIFIED STATEMENT OF OUT-OF-STATE ATTORNEY PURSUANT TO
## SUPREME COURT RULE 707

I, Mimi Liu, submit this Verified Statement pursuant to Illinois Supreme Court Rule 707.

1.    My full name is Mimi Yun-Choo Liu, my date of birth is May 1, 1974. The address of offices from which I practice law and related email address and telephone numbers are as follows:

MOTLEY RICE LLC
401 9TH ST NW, SUITE 1001
WASHINGTON DC, 20004
TELEPHONE: 202.386.9625
EMAIL: MLIU@MOTLEYRICE.COM

2.    I represent the City of Chicago in Case No. 2020CH04183, Circuit Court of Cook County.

3(a).    I have not filed any other appearance pursuant to this rule during this calendar year.

3(b).    I have not received a registration number from the ARDC.

FILED DATE: 9/4/2020 9:50 AM   2020CH04183

4(a).    I list each jurisdiction of admission, including any state, territory, or commonwealth of the United States, the District of Columbia, or in a foreign country, and my full admission name and license number.

| Jurisdiction | Admission Name | License Number |
|---|---|---|
| New York | Mimi Liu | 3896123 |
| Washington, DC | Mimi Liu | 472382 |

4(b).    I attach a letter or certificate of good standing for each of the jurisdictions listed in paragraph 4(a) above.

5.    I have no office or other presence in Illinois for the practice of law.

6.    I submit to the disciplinary authority of the Supreme Court of Illinois.

7.    I have undertaken to become familiar with and to comply, as if admitted to practice in Illinois, with the rules of the Supreme Court of Illinois, including the Illinois Rules of Professional Conduct and the Supreme Court Rules on Admission and Discipline of Attorneys, and other Illinois law and practices that pertain to the proceeding.

8.    The full name, business address and ARDC number of the Illinois attorney with whom I have associated in the matter is:

Stephen J. Kane (ARDC # 6272490)
Deputy Corporation Counsel
Affirmative Litigation Division
City of Chicago Department of Law
121 North LaSalle Street, Room 600
Chicago, Illinois 60602
(312) 744-6934
stephen.kane@cityofchicago.org

9.    I certify that I have served this Statement upon Defendants JUUL Labs, Inc., Leah Mol, Inc. doing business as Rog Mobil, 2550 Pulaski Business, Inc. doing business as Mobil, 4901

FILED DATE: 9/4/2020 9:50 AM    2020CH04183

Central Inc. doing business as Mobil, T and M Gas, Inc. doing business as Shell, and Irving Shell Gas and Food, Inc. and/or their counsel and that these parties are all entitled to service under this rule.

<u>Verification</u>

I verify the accuracy and completeness of each of the above statements.

Mimi Liu
401 9th Street NW, Suite 1001
Washington, D.C. 20004
Telephone: 202.386.9625
Facsimile: 202.386.9622
mliu@motleyrice.com

FILED DATE: 9/4/2020 9:50 AM   2020CH04183



On behalf of JULIO A. CASTILLO, Clerk of the District of Columbia Court of Appeals, the District of Columbia Bar does hereby certify that

*Mimi YC Liu*

was duly qualified and admitted on May 11, 2001 as an attorney and counselor entitled to practice before this Court; and is, on the date indicated below, an Active member in good standing of this Bar.

**In Testimony Whereof, I have hereunto subscribed my name and affixed the seal of this Court at the City of Washington, D.C., on April 1, 2020.**

**JULIO A. CASTILLO**
**Clerk of the Court**

Issued By:
District of Columbia Bar Membership

For questions or concerns, please contact the D.C. Bar Membership Office at 202-626-3475 or email memberservices@dcbar.org.

FILED DATE: 9/4/2020 9:50 AM   2020CH04183

## Appellate Division of the Supreme Court
## of the State of New York
### First Judicial Department

I, Susanna Rojas, Clerk of the Appellate Division of the Supreme Court of the State of New York, First Judicial Department, certify that

# Mimi Yun-Choo Liu

was duly licensed and admitted to practice as an Attorney and Counsellor at Law in all the courts of the State of New York on October 3, 2000, has duly taken and subscribed the oath of office prescribed by law, has been enrolled in the Roll of Attorneys and Counsellors at Law on file in my office, has duly registered with the administrative office of the courts, and according to the records of this court is in good standing as an attorney and counsellor at law.

In Witness Thereof, I have hereunto set my hand and affixed the seal of this court on May 15, 2020

Clerk of the Court

3877

**IN THE CIRCUIT COURT OF COOK COUNTY**
**COUNTY DEPARTMENT, CHANCERY DIVISION**

**GENERAL ADMINISTRATIVE ORDER NO. 2020-09**

**SUBJECT:    COVID-19 MEASURES**

This General Administrative Order is entered pursuant to continuing court measures implemented by Chief Judge Evans for the COVID-19 pandemic.

**IT IS HEREBY ORDERED:**

In conjunction with General Administrative Order 2020-02 by Chief Judge Timothy Evans on July 29, 2020, the following procedures will be in effect for the Chancery Division. This order supersedes Chancery Division General Administrative Order 2020-08 (as amended June 29, 2020).

## I.   REMOTE HEARINGS TO CONTINUE

Court hearings in the entire division will be held remotely by videoconference or teleconference as much as possible.  Should a hearing need to be conducted in-person at the Daley Center, it will be held in accordance to protocols set forth in Chief Judge Evans' General Administrative Order 2020-02.

## II.  GENERAL CHANCERY CASES

Pursuant to Chief Judge Evans' General Administrative Order 2020-02 the following motion practice procedures will be in place for General Chancery matters barring further unforeseen circumstances.

### A.  *Emergency Motions.*

1. Definition of "Emergency": Emergency matters are defined as a sudden and unforeseen circumstance that may cause injury, loss of life, or damage to property and that requires an urgent response and remedial action.

2. Email: Litigants or lawyers may email the calendar to which a case is assigned to schedule an emergency motion with chambers' staff.  The movant should attach courtesy copies of the emergency motion and notice of emergency motion and any relevant filings to the email.  The email addresses for each General Chancery Calendar are listed in Section II(C) below.

3. Telephone: Litigants or lawyers may contact the dedicated e-mail of each judge's calendar or may call the judge's phone number to schedule an emergency motion with chambers' staff.  If the emergency motion is scheduled over the telephone, courtesy copies should be delivered by email at the calendar email address listed below and according to the directions of chambers' staff.

1

**B.** ***Triage of Cases to Commence July 6, 2020.*** Commencing July 6, 2020, the Chancery Division will begin to hear cases set on each calendar using a triage approach as set forth below.

    1.  Triage Procedures:

        a)  *298 Petitions.* 298 Petitions shall be ruled upon in writing based on the written Petition except that the Court may Order any person filing a 298 Petition to appear and present his/her Petition in person or by videoconference.

        b)  *Motions to Consolidate Cases on the Presiding Judge's Call.* The respondent shall indicate whether he/she is objecting to the motion. In the event of an objection, the Court will determine the number of days within which the Respondent to the Motion shall respond and proceed to issue a written Order on the Motion. In the event the Court determines that any further argument or proceeding is necessary, the Court will set the time for either a teleconference, a videoconference, or an in-person proceeding. The Court shall endeavor to issue its Order within 5 days of the response filed.

        c)  *Petition for Turnover of Surplus Funds on the Presiding Judge's Call.* The Court shall review the Petition for Turnover of Surplus Funds. In the event of an objection by any party receiving notice, the Court will determine the number of days within which the Respondent to the Motion shall respond and proceed to issue a written Order on the Motion. In the event the Court determines that any further argument or proceeding is necessary, the Court will set down the time for either a teleconference, a videoconference, or an in-person proceeding. The Court shall endeavor to issue its Order within 5 days of the response filed.

        d)  *Motions of Course.* The Court will determine the number of days within which the Respondent to the Motion shall respond and proceed to issue a written Order on the Motion. In the event the Court determines that any further argument or proceeding is necessary, the Court will set down the time for either a teleconference, a videoconference, or an in-person proceeding. The Court shall endeavor to issue its Order within 5 days of the response filed. In addition, each Order shall provide a status date by which the parties will provide an update of the case to the Court.

        e)  *Status Hearings and Case Management Dates.* The Court will determine the number of days within which the parties shall submit written status reports. The Court shall proceed to issue a written Order after receiving the parties written status reports. In the event the Court determines that any further argument or proceeding is necessary, the Court will set down the time for either a teleconference, a videoconference, or an in-person proceeding. The Court shall endeavor to issue its Order within 5 days of receiving the status reports. In

addition, each Order shall provide a status date by which the parties will provide an update of the case to the Court.

f) *Contested Motions.* The parties shall submit a briefing schedule to the Court and shall submit courtesy copies of the e-filed briefs on the Court's designated e-mail. The parties shall indicate whether they are requesting or waiving an oral argument. Within five days of the last pleading filed, the Court will enter an Order for oral argument or a written ruling date. The Court will determine whether the oral argument shall be held in open Court, via teleconferencing, or by videoconferencing.

g) *Trials.* Bench trials and evidentiary hearings may be conducted by videoconference at the discretion of the judge presiding over the matter. Any trials and other evidentiary hearings that need to be held in person shall be held with all necessary safeguards taken or continued to protect public health and safety.

h) *Settlement Conferences.* Settlement conferences may be conducted by videoconference at the discretion of the judge presiding over the matter. Any settlement conferences that need to be held in person shall be held with all necessary safeguards taken or continued to protect public health and safety.

i) *Proposed Agreed Orders.* Proposed agreed orders may be filed with the Court at any time and the Court will determine how to proceed to rule on such Proposed Orders.

2. <u>Limits on In-Person Proceedings.</u> If a matter needs to be heard in person, no more than 10 people will be allowed in the Courtroom at any given time including the Court and its staff, until further order of court.

3. <u>Courtesy Copies.</u> Courtesy copies may be delivered electronically via email to the email address assigned to the calendar for the case as follows:

**C.** *Communications with the Court.* Parties and litigants may email the calendar to which a case is assigned for emergency matters, to deliver courtesy copies, or to deliver proposed orders. The email addresses for each General Chancery calendar are as follows:

| Calendar No. | Judge | Email Address |
|---|---|---|
| 2 | Hon. Raymond W. Mitchell | ccc.chancerycalendar2@cookcountyil.gov |
| 3 | Hon. Franklin U. Valderrama | ccc.chancerycalendar3@cookcountyil.gov |
| 4 | Hon. Alison C. Conlon | ccc.chancerycalendar4@cookcountyil.gov |
| 5 | Hon. Neil H. Cohen | ccc.chancerycalendar5@cookcountyil.gov |
| 6 | Hon. Celia G. Gamrath | ccc.chancerycalendar6@cookcountyil.gov |

| 7 | Hon. Eve M. Reilly | ccc.chancerycalendar7@cookcountyil.gov |
| 8 | Hon. Michael T. Mullen | ccc.chancerycalendar8@cookcountyil.gov |
| 9 | Hon. Sanjay Tailor | ccc.chancerycalendar9@cookcountyil.gov |
| 10 | Hon. C. Kate Moreland | ccc.chancerycalendar10@cookcountyil.gov |
| 11 | Hon. Pamela M. Meyerson | ccc.chancerycalendar11@cookcountyil.gov |
| 12 | Presiding Judge Moshe Jacobius | ccc.chancerycalendar12@cookcountyil.gov |
| 13 | Hon. Anna H. Demacopoulos | Chancery.calendar13@cookcountyil.gov |
| 14 | Hon. Sophia H. Hall | ccc.chancerycalendar14@cookcountyil.gov |
| 15 | Hon. Anna M. Loftus | Calendar15.chancery@cookcountyil.gov |
| 16 | Hon. David B. Atkins | ccc.chancerycalendar16@cookcountyil.gov |

**D.** ***Motions Rescheduled for a Later Date.*** At any point during the continuing COVID-19 protocols, the Court's staff may contact counsel or self-represented litigants, as necessary and possible, and attempt to triage cases at an earlier time at the sole discretion of the Court.

## III. MECHANICS LIEN CASES

**A.** ***Handling of Mechanics Lien Cases.*** Cases in the Mechanic's Lien Section shall be handled in the same manner as the General Chancery Section. Motions of Course, contested otions, trials, settlement conferences, and evidentiary hearings shall be handled as set forth above in Section II.

**B.** ***Communications with the Court.*** Parties and litigants may email the calendar to which a case is assigned for emergency matters, to deliver courtesy copies, or to deliver proposed orders. The email addresses for each Mechanics Lien calendar are as follows.

| Calendar No. | Judge | Email Address |
| --- | --- | --- |
| 52 | Hon. Anthony C. Kyriakopoulos | ccc.mfmlcalendar52@cookcountyil.gov |
| 53 | Supervising Judge Lewis M. Nixon | ccc.mfmlcalendar53@cookcountyil.gov |
| 54 | Hon. Daniel P. Brennan | ccc.mfmlcalendar54@cookcountyil.gov |

## IV. MORTGAGE FORECLOSURES

Pursuant to Chief Judge Evans' General Administrative Order 2020-02, all mortgage foreclosure matters are stayed and reset to a date after August 22, 2020. The following motion practice procedures will be in place for foreclosure matters until August 22, 2020 barring further unforeseen circumstances

**A.** ***Stay on Foreclosure Judgments and Sales.*** All mortgage foreclosure judgments, evictions in furtherance of a foreclosure, and foreclosure sales are stayed until August

22, 2020. Plaintiffs should not be serving summons in foreclosures that would displace a tenant or resident of the property for the duration of this stay on foreclosures.

**B.** *Emergency Motions.* Emergency matters will be heard from present through August 22, 2020.

    1. <u>Definition of "Emergency"</u>: Emergency matters are defined as a sudden and unforeseen circumstance that may cause injury, loss of life, or damage to property and that requires an urgent response and remedial action

    2. <u>Email</u>: Litigants or lawyers may email the calendar for the case to schedule an emergency motion with chambers' staff. The movant should attach courtesy copies of the emergency motion and notice of emergency motion and any relevant filings to the email. Email addresses for communication are listed in Section G below.

    3. <u>Telephone</u>: Litigants or lawyers may contact (312) 603-3900 to schedule an emergency motion with chambers' staff. If the emergency motion is scheduled over the telephone, courtesy copies should be delivered by email the calendar for the case according to the directions of chambers' staff.

**C.** *Foreclosure Orders that Will Not Be Entered.* The following orders will not be entered from present through August 22, 2020:

    1. Judgment of Foreclosure;
    2. Summary Judgment Order;
    3. Order for Default;
    4. Order Approving Sale;
    5. Order for Possession that would displace a resident or tenant from a home;
    6. Quarterly Special Process Server Order with the Dates 7/1/20-9/30/20 (*See* Section D below);
    7. Special Process Server Orders in residential cases; and
    8. Any other order the court determines to be in furtherance of a foreclosure, foreclosure sale, or eviction.

**D.** *Special Process Server Orders*

    1. <u>Standing Special Process Server Orders Pursuant to GAO 2007-03</u>. Requests for Standing Special Process Server orders entered pursuant to GAO 2007-03 that are entered each quarter may be submitted for the dates: August 23, 2020 through September 30, 2020. Motions and proposed orders may be sent to the following email address: **ccc.mfmlspsorders@cookcountyil.gov**.

    2. <u>Individual Special Process Server Requests</u>. Requests in individual cases for Special Process Servers will not be entered for residential cases or cases where

tenants may be displaced, except under exigent circumstances, until August 23, 2020.

**E.** *Triage and Rescheduling of Continued Cases.*

The Mortgage Foreclosure Section will begin handling cases set on each calendar using a triage approach as set forth below, subject to further directives from Chief Judge Evans.

1.  Court to Reschedule Cases. On any case that is currently pending before the court with a hearing date relating to the entry of a foreclosure order between entry of this order and August 22, 2020, the Court will enter an order continuing the matter for a date after August 22, 2020 and notify the parties of entry of the order.

2.  Matters Available for Consideration between Present and August 22, 2020.
    a)  *Withdrawal of Motions.* If a movant has a pending motion, and wishes to withdraw that motion from consideration or for continuance, the movant may email a copy of the proposed order withdrawing the motion to the calendar to which it is assigned. Email addresses for communication are listed in Section IV (G) below.

    b)  *Voluntary Dismissals.* Voluntary dismissals of pending foreclosures will be entered. Plaintiffs must submit a proposed order dismissing the case by emailing the proposed order to the appropriate calendar email listed in Section IV (G) below.

    c)  *Vacant Properties.* Foreclosures of vacant properties may proceed where sufficient proof that the property is vacant and abandoned is provided to the Court prior to proceeding. Plaintiffs should email the appropriate calendar with a motion requesting permission to proceed on the foreclosure and detailing the evidence to prove the property is vacant or abandoned with no residents.

    d)  *Receivers.* Motions relating to receivers in mortgage foreclosure cases will be heard on a case-by-case basis as determined by the Court that are in compliance with this General Administrative Order and directives from Chief Judge Evans. Receivers' motions will be scheduled at the sole discretion of the judge presiding over the matter.

    e)  *Pending Sale Approvals with Third-Party Bidders.* This sub-section applies only to mortgage foreclosure cases where the sale occurred prior to March 16, 2020 **and** a third-party was the successful bidder and the sale is still pending approval due to COVID-19 protocols. The plaintiff may submit a motion, or the third-party bidder may submit a motion to intervene, for consideration on an emergency basis to void the sale and allow the third-

party bidder to recover the funds being held from the sale. Whether the motion is heard by the Court on an emergency basis is in the sole discretion of the judge presiding over the matter.

f) *Special Representatives.* If a pending motion relating to Special Representatives is rescheduled by the Court for a date after August 22, 2020, the movant may email the calendar for the matter and request an earlier date for the motion to be heard. Whether the matter is rescheduled for a date before August 22, 2020 is in the sole discretion of the judge presiding over the matter.

g) *Case Managements.* The Court may enter orders on case managements scheduled between present and August 22, 2020 as deemed appropriate by the judge presiding over the matter.

3. <u>Case Procedures After August 22, 2020</u>

The following procedures will be in place after August 22, 2020, barring further unforeseen circumstances.

a) *Case Management Statuses.* Plaintiff will provide the Court with a Case Management Status sheet and notice to the Respondent. The Plaintiff shall be excused from appearing on the date the case management is noticed. In the event Defendant appears, the Court shall enter an Order granting Defendant leave to file his/her answer and appearance. After the date for which the case was noticed and the defendant given an adequate time to respond, the Court shall enter an Order either striking the Case Management from the call ("4331") or memorializing the time Defendant was granted to file his/her answer and appearance and shall provide a new status date. The court shall specify if the status is to be held by teleconference, a Zoom meeting, or an in-person proceeding based on any requests from parties.

b) *Motion for Default, Summary Judgment, and Judgment of Foreclosure.* The Motions for Default, Summary Judgment, and entry of Judgment of Foreclosure shall be noticed for a date as allowed through e-filing in the Clerk's e-filing system. Plaintiff should file the Default Motion with all required documents required under the Court's standing orders with notice to Defendant(s) and the Defendant(s) given an adequate time to respond. In the event Defendant(s) appear, the Court shall enter an Order of continuance and set the matter for either a teleconference, a video conference or an in Court proceeding. In the event Defendant(s) fail to appear, then the Court may enter a Default Order, Summary Judgment and an Order of Foreclosure within the Court's discretion in the event the Plaintiff has complied with the procedural requirements of the Court. The

parties may request a remote proceeding prior to sending out notice by contacting the court.

c) *Contested Motions*. Defendant(s) shall submit a response to the motion being contested and, where necessary, a briefing schedule to the Court and shall submit courtesy copies of their e-filed briefs on the Court's designated e-mail. The parties shall indicate whether they are requesting or waiving oral argument. A clerk status shall be entered by the Court on a date after all briefs have been filed. On the Clerk Status date, the Court will enter an Order for oral argument or a written ruling date. The Court will determine whether the oral argument shall be held in open Court, via teleconferencing or by videoconference.

d) *Continued Sales*. Re-notice and re-publication will be required on all sales that were scheduled and continued due to the stay on foreclosures.

e) *Order Approving Sale*. Plaintiff shall file a Motion for an Order Approving Sale with all necessary attachments, notice to Defendant(s), and the Defendant(s) given an adequate time to respond. Plaintiff shall be excused from appearing for the Motion. In the event Defendant(s) appear, the Court shall enter an Order of continuance and set the matter for either a teleconference, a video conference or an in-person proceeding. In the event Defendant(s) fail to appear, then the Court may enter an Order Approving Sale within the Court's discretion in the event the Plaintiff has complied with the procedural requirements of the Court.

2. <u>Limits on In-Person Proceedings</u>. If a matter needs to be heard in person, no more than 10 people will be allowed in the Courtroom at any given time including the Court and its staff, until further order of court.

3. <u>Courtesy Copies</u>. Courtesy copies may be delivered electronically via email to the email address assigned to the calendar for the case.

F. ***Motions Rescheduled for a Later Date.*** At any point during the continuing COVID-19 protocols, the Court's staff may contact counsel or self-represented litigants, as necessary and possible, and attempt to triage cases at an earlier time at the sole discretion of the Court. This discretion includes agreed orders and other motions that the court determines are not prohibited for entry prior to August 22, 2020.

G. ***Communications with the Court.*** **<u>Each order entered by the Court shall contain the court's email and phone number for contact.</u>** Parties and litigants may email the calendar to which a case is assigned for emergency matters, to deliver courtesy copies, or to deliver proposed orders. The email addresses for each mortgage foreclosure calendar are as follows:

| Calendar No. | Judge | Email Address |
|---|---|---|
| 56 | Hon. Freddrenna M. Lyle | ccc.mfmlcalendar56@cookcountyil.gov |
| 57 | Hon. Joel Chupack | ccc.mfmlcalendar57@cookcountyil.gov |
| 58 | Hon. Darryl B. Simko | ccc.mfmlcalendar58@cookcountyil.gov |
| 59 | Hon. Edward N. Robles | ccc.mfmlcalendar59@cookcountyil.gov |
| 60 | Hon. William B. Sullivan | ccc.mfmlcalendar60@cookcountyil.gov |
| 61 | Hon. Cecilia A. Horan | ccc.mfmlcalendar61@cookcountyil.gov |
| 62 | Hon. Marian E. Perkins | ccc.mfmlcalendar62@cookcountyil.gov |
| 63 | Hon. Gerald V. Cleary | ccc.mfmlcalendar63@cookcountyil.gov |
| 64 | Hon. Patricia S. Spratt | ccc.mfmlcalendar64@cookcountyil.gov |

ENTERED:

Date: July 29, 2020

Moshe Jacobius
Presiding Judge
Chancery Division

ENTERED
Judge Moshe Jacobius-1556
JUL 29 2020
DOROTHY BROWN
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL
DEPUTY CLERK

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Cook County Cir. Ct. G.A.O. 2020-02 (eff. July 6, 2020) is hereby amended as follows:

In response to the measures necessitated by the evolving COVID-19 pandemic, including, but not limited to, executive orders of the State of Illinois, Cook County, the City of Chicago, and other local municipalities, Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities (Mar. 23, 2020) of the U.S. Centers for Disease Control and Prevention, Cook Co. Cir. Ct. G.A.O. No. 2020-01 (eff. May 28, 2020), as amended) is hereby superseded.

## GENERAL ADMINISTRATIVE ORDER: 2020-02

## SUBJECT: COVID-19 EMERGENCY MEASURES, RESUMPTION OF OPERATIONS

In light of the global coronavirus pandemic (COVID-19) and Ill. Executive Order Nos. 30 and 48, and in order to protect the health and safety of the general public, the court's judges and employees, and the staffs of elected officials, and after conferring with the offices of the Cook County State's Attorney, Public Defender, Sheriff, Circuit Clerk, County Board President, the Circuit Court Executive Committee, and representatives of the private bar, and pursuant to Ill. S. Ct. R. 21(b) and the court's inherent authority,

**IT IS HEREBY ORDERED** that, except as provided below or as otherwise ordered by the judge presiding, effective July 6, 2020, the circuit court will begin hearing all matters in all Districts and Divisions of the court with the exception of jury trials;

**IT IS FURTHER ORDERED** that, except as provided below or as otherwise ordered by the judge presiding, effective July 6, 2020, all matters in all Districts and Divisions of the court shall be conducted by videoconference to the extent reasonably possible, subject to the limitations imposed by the Constitutions of the United States and the State of Illinois; at the discretion of the judge presiding, after considering party objections, proceedings may be conducted by teleconference, videoconference, in person, or a combination of those means;

**IT IS FURTHER ORDERED** that, except as necessary for the purposes enumerated below or as otherwise directed by the chief judge, all judges and employees of the court, except those who are essential for essential court operations, shall work remotely and conduct business telephonically or by videoconference; nothing in this order shall be interpreted to infringe on a judge's discretion to conduct a teleconference or videoconference from the courthouse;

**IT IS FURTHER ORDERED** that, in accordance with Illinois Supreme Court Rule 45 (eff. May 22, 2020), unless otherwise ordered by the judge presiding for good cause, all attorneys and self-represented litigants participating by teleconference or videoconference shall be permitted to do so from a location of their choosing; self-represented litigants in the sheriff's custody shall be provided access to court proceedings by videoconference or in person, as ordered by the judge presiding;

**IT IS FURTHER ORDERED** that all persons must wear masks or other face coverings in the courthouse, including while in the courtrooms; notwithstanding the foregoing provision, participants shall not be required to wear masks or other face coverings while speaking on the record, and sign language interpreters shall not be required to wear masks while interpreting;

**IT IS FURTHER ORDERED** that official court reporters and interpreters shall be available for remote proceedings as they would be for in-person proceedings; broadcasting, transmitting or publishing audio or video recordings of teleconference and videoconference court proceedings are prohibited, except as authorized by Ill. S. Ct. R. 46 (eff. May 22, 2020);

**IT IS FURTHER ORDERED** that no residential real estate eviction action shall commence until after August 22, 2020, unless a tenant poses a direct threat to the health and safety of other tenants, an immediate and severe risk to property, or a violation of any applicable building code, health ordinance, or similar regulation; the sheriff of Cook County shall refrain from enforcement of eviction orders relating to residential real estate and shall resume enforcement of said orders after August 22, 2020, or as otherwise ordered by the court; the time period in which such orders expiring before August 22, 2020, must be enforced pursuant to 735 ILCS 5/9-117 is extended 60 days from said expiration date, but not later than October 20, 2020;

**IT IS FURTHER ORDERED:**

1. **Effective July 6, 2020**

   a. **ALL DIVISIONS AND DISTRICTS:**

      i. Judges will be available, either on-site or remotely, in each division and district to hear emergency matters;

      ii. Judges shall contact the attorneys and self-represented litigants in all cases on their docket currently scheduled for a hearing of any kind and determine the following:

         1. whether a hearing is necessary;

         2. whether a necessary hearing can be conducted by videoconference, teleconference, or must be conducted with some or all participants in the courtroom;

         3. the date of the next court proceeding, including any continuance;

      iii. Notwithstanding the provisions of section 1(a)(ii) of this order, the Presiding Judge of a District or Division shall, alternatively, establish procedures for rescheduling cases by administrative order, as long as such procedures are consistent with the remainder of this order;

      iv. In cases in which all parties are self-represented, the judge presiding shall direct the circuit clerk to send the parties a postcard scheduling the matter on the court's calendar or provide notice through the sheriff if a party is in custody, and court personnel shall contact the parties to the extent it is reasonably possible and notify them of the new court date in their case; on

the new court date, the court shall request an email address or phone number at which the court may contact the self-represented parties to schedule future matters;

**v.** In-person court dates shall be staggered, by date, time, and floor, to minimize the number of persons in the courtrooms and every other part of the courthouse until further order of the court;

**vi.** When defendants in criminal cases are permitted to return to court, by administrative order or order of the judge presiding, the failure of a defendant not in custody to appear on the first return court date shall not result in the issuance of a warrant, and a continuance for 30 days shall be ordered; the judge presiding over the matter shall have discretion to enter further continuances and to issue bond forfeiture warrants, taking into consideration the COVID-19 pandemic emergency and public safety considerations; the clerk shall send notice of each court date to the defendant at the address on the defendant's bond;

**vii.** When jury trials resume, the judge presiding shall schedule jury trials not less than 60 days after the date on which the parties are notified of the trial date;

**viii.** Until further order of the court, at the discretion of the judge presiding and upon execution by all parties of waivers of physical presence, bench trials may be held by videoconference;

**ix.** Initial and responsive pleadings and responsive motions may be filed, as provided in Ill. S. Ct. R. 9 (eff. Jan. 1, 2020), in person or by electronic filing with the circuit clerk;

**x.** Mandatory arbitration hearings currently scheduled on or before July 6, 2020, shall be rescheduled;

**xi.** Except as ordered herein, procedures for the administration of court operations shall be determined by the Presiding Judge for the Division or District under his or her supervision;

**xii.** The judge presiding, together with the sheriff, shall take necessary and appropriate measures to ensure the following:

    **1.** At no time shall there be more persons in the courtroom than the number established under guidance by the appropriate public health authorities;

    **2.** At all times, all persons in the courtroom shall maintain a minimum distance of 6 (six) feet from all other persons in the courtroom;

**b. PRETRIAL DIVISION:** Bail hearings, including motions to review bail, shall be conducted daily at the Leighton Criminal Court Building;

**c. CRIMINAL MATTERS, ALL DIVISIONS AND DISTRICTS:**

**i.** Priority shall be given to the following matters, with additional priority given cases in which the defendant is incarcerated:

   **1.** arraignment;

   **2.** preliminary hearing or preliminary examination;

   **3.** motion to dismiss on speedy trial grounds;

   **4.** hearing on discovery status;

   **5.** evidentiary hearing on motion;

   **6.** conference pursuant to Ill. S. Ct. R. 402;

   **7.** entry of guilty plea;

   **8.** hearing on violation or termination of probation;

   **9.** hearing on violation of bail bond;

   **10.** hearing on fitness;

**ii.** Except as otherwise ordered by the judge presiding, the following matters shall be conducted by videoconference whenever it is reasonably possible to do so:

   **1.** initial bail hearing;

   **2.** waiver of a preliminary hearing;

   **3.** arraignment on an information or indictment to which a plea of not guilty will be entered;

   **4.** presentation of a jury waiver;

   **5.** any status hearing;

   **6.** any hearing conducted under the Sexually Violent Persons Commitment Act at which no witness testimony will be taken; and

   **7.** any hearing, upon waiver of any right the person in custody or confinement may have to be present physically;

      a. waiver of physical presence for those persons who have been placed on electronic monitoring and are charged with violent felonies, such as murder or Class X violent offenses, is not automatically waived and must be ordered by the judge presiding;

      b. for any hearing where the physical presence of the defendant(s) has been waived, the physical presence of victims and witnesses is excused;

   **8.** Unless ordered to be physically present by the judge presiding, the defendant may waive his or her physical presence and appear by videoconference;

**iii.** Any delay resulting from this order or from Cook County Cir. Ct. G.A.O. 2020-01 (eff. Mar. 17, 2020, and as subsequently amended) shall not be

attributable to either the State or the defendant for purposes of sections 103-5 (speedy trial) of the Code of Criminal Procedure of 1963 (725 ILCS 5/103-5);

**d. JUVENILE JUSTICE DIVISION:**

    **i.** Juvenile detention hearings, including all motions to review detention, and other emergency matters shall be conducted daily at 1100 S. Hamilton Ave., Chicago;

    **ii.** Priority shall be given to the following matters, with additional priority given cases in which the respondent is incarcerated:

        **1.** arraignment;

        **2.** probable cause hearing;

        **3.** motion to dismiss on speedy trial grounds;

        **4.** hearing on discovery status;

        **5.** evidentiary hearing on motion;

        **6.** conference pursuant to Ill. S. Ct. R. 402;

        **7.** entry of guilty plea;

        **8.** hearing on violation or termination of probation;

        **9.** hearing on violation of pretrial release;

        **10.** hearing on fitness;

    **iii.** Except as otherwise ordered by the judge presiding, the following matters shall be conducted by videoconference whenever it is reasonably possible to do so:

        **1.** initial detention hearing;

        **2.** arraignment on a petition to which a plea of not guilty will be entered;

        **3.** presentation of a jury waiver;

        **4.** any status hearing;

        **5.** any hearing conducted under the Sexually Violent Persons Commitment Act at which no witness testimony will be taken; and

        **6.** any hearing, upon waiver of any right the person in custody or confinement may have to be present physically;

        **7.** Unless ordered by the judge presiding, the respondent's appearance is not required;

    **iv.** Any delay resulting from this order or from Cook County Cir. Ct. G.A.O. 2020-01 (eff. Mar. 17, 2020, and as subsequently amended) shall not be attributable to either the State or the juvenile for purposes of section 5-601 of the Juvenile Court Act (705 ILCS 405/5-601);

**e. CHANCERY DIVISION:**

    **i.** All mortgage foreclosure judgments, evictions in furtherance of a foreclosure, and foreclosure sales are stayed until after August 22, 2020, including any court order in furtherance of a foreclosure, such as an order for default, summary judgment, and orders approving sales; other contested motions may continue to be litigated and ruled upon by the court, including, but not limited to, discovery motions, special representative motions, and receiver motions;

**f. MUNICIPAL DEPARTMENT, CRIMINAL AND TRAFFIC CASES:**

    **i.** In Districts 2-6, the sheriff shall provide the equipment and location for defendants to participate in bail hearings by videoconference;

    **ii.** Criminal proceedings normally heard at Branches 9, 23, 29, 35, 38, 43, and 44 located at 3150 W. Flournoy St., 5555 W. Grand Ave., and 727 E. 111th St. in the City of Chicago, shall resume hearings at the above locations via teleconference or videoconference whenever it is reasonably possible; otherwise, at the discretion of the judge presiding, considering the input of the parties, in person hearings shall be allowed;

    **iii.** All proceedings normally heard in Branches 42 and 50, including preliminary examinations or hearings, shall continue to be heard in the Second District;

    **iv.** Unless otherwise ordered by the judge presiding, all in-person misdemeanor and traffic matters are hereby continued until further order of the court; the circuit clerk shall provide notice of the new court date to the parties;

**g. ADULT PROBATION DEPARTMENT, SOCIAL SERVICE DEPARTMENT, AND JUVENILE JUSTICE AND COURT SERVICES DEPARTMENT:** Probation officers and social service caseworkers shall contact clients to schedule essential meetings, which are to be held only by videoconference or teleconference;

**h. CIVIL MATTERS, ALL DIVISIONS AND DISTRICTS:**

    **i.** Except for oral depositions, discovery shall continue as scheduled; oral discovery may be taken by videoconference pursuant to Illinois Supreme Court Rule 206(h) (eff. Oct. 19 2019);

    **ii.** Where it is not reasonably possible to conduct an oral deposition for reasons related to the COVID-19 emergency, the parties shall use their best efforts to postpone the deposition by agreement and stipulation for a period not to exceed 60 days; absent such agreement, the proceedings shall be deferred until such later date as the court can review the matter and issue appropriate directives; nothing in this order shall be construed to

limit the discretion of the judge presiding to determine the merits of an attorney's alleged inability to comply with an oral deposition;

iii. Except for good cause shown, participants in litigation shall not be penalized if discovery compliance is delayed for reasons relating to the COVID-19 emergency; this provision is to be liberally construed;

iv. The Presiding Judge of a District or Division shall establish procedures for hearing all matters, including, but not limited to, scheduling by administrative order, as long as such procedures are consistent with the remainder of this order;

i. **CIVIL NO CONTACT ORDERS, CIVIL ORDERS OF PROTECTION, FIREARMS RESTRAINING ORDERS, STALKING NO CONTACT ORDERS:**

   i. Petitions for emergency orders in cases where the parties are not involved in a pending Domestic Relations matter shall be heard at 555 W. Harrison St., Chicago, and in Municipal Districts 2, 3, 5, and 6;

   ii. Petitions for any of the following sought in connection with a Domestic Relations or Probate case shall be heard at the Richard J. Daley Center, or the relevant suburban Domestic Relations or Probate courtrooms hearing such matters, or at a location as determined by the Presiding Judge of the respective Division:

      1. emergency civil no contact orders;

      2. emergency civil orders of protection;

      3. emergency stalking no contact orders;

   iii. Petitioners and respondents for civil no contact orders, civil orders of protection, and stalking no contact orders may participate in hearings by videoconference from places of their choosing;

j. **DOMESTIC RELATIONS DIVISION:**

   i. In child-support cases in which the state's attorney has filed an appearance, the circuit clerk shall notify the parties of new court dates scheduled pursuant to this order;

   ii. Court ordered participation for litigants in programs such as mediation, evaluations, counseling, parenting classes, and classes for children shall continue, but are to be done by remote audio-visual means whenever reasonably possible until further order of the court;

   iii. The administrative orders addressing access during COVID-19 entered by the Presiding Judge of the Domestic Relations Division shall remain in full force and effect until further order of the court;

k. **DOMESTIC VIOLENCE DIVISION:** When a defendant in a criminal case at 555 W. Harrison St., Chicago, Ill., is denied bail or is unable to post required

monetary bail at the conclusion of the bail hearing, the arresting agency shall transport the defendant to the Cook County Department of Corrections, 2700 S. California Ave, Chicago, Ill.;

l. **CHILD PROTECTION DIVISION:** The Presiding Judge shall establish procedures for hearing all matters, including, but not limited to, scheduling by administrative order, as long as such procedures are consistent with the remainder of this order;

m. **COUNTY DIVISION:** The Presiding Judge shall establish procedures for hearing all matters, including, but not limited to, scheduling by administrative order, as long as such procedures are consistent with the remainder of this order;

n. **LAW DIVISION:**

    i. Except for jury trials, the Presiding Judge shall establish procedures for hearing all matters, including, but not limited to, scheduling by administrative order, as long as such procedures are consistent with the remainder of this order;

    ii. The Presiding Judge shall establish procedures for pretrial proceedings in cases that were ready for trial but were not permitted to proceed due to the COVID-19 pandemic, as well as cases that cannot proceed after July 6, 2020, because of the COVID-19 pandemic;

    iii. The Presiding Judge shall establish procedures for mediation of cases by agreement of the parties as an alternative to pretrial proceedings in cases as provided in provision n(ii) above;

    iv. For cases scheduled for jury trial, with the agreement of the parties to a bench trial, the Presiding Judge shall establish procedures for cases to be heard by bench trial, via video conference when reasonably possible or in-person;

o. **PROBATE DIVISION:** Except for jury trials, the Presiding Judge shall establish procedures for hearing all matters, including, but not limited to, scheduling by administrative order, as long as such procedures are consistent with the remainder of this order;

p. **GRAND JURY:** Grand juries shall continue to meet a maximum of three times per week, and be impaneled from time to time as ordered by the Chief Judge;

q. **FORENSIC EXAMINATIONS:** In criminal cases, all forensic examinations of defendants, both adult and juvenile, shall be conducted via videoconference;

r. **BAIL, FEES, COURT COSTS, AND PENALTIES, CRIMINAL CASES:**

    i. Pursuant to Cook County Code § 18-49,

        1. The circuit clerk shall not deduct any fees, court costs, or penalties from bail bond funds posted by a Charitable Bond Fund or other Third-Party Surety without the surety's voluntary, written consent;

    **2.** The circuit clerk shall not use bail bond funds posted by a Charitable Bond Fund or other Third-Party Surety to pay attorney fees, including reimbursement for representation by the public defender, without the surety's voluntary, written consent;

  **ii.** At the conclusion of the case, the circuit clerk shall return all available funds posted by a Charitable Bond Fund or other Third-Party Surety to the surety;

  **iii.** Pursuant to 705 ILCS 105/27.3B, where a charitable bond fund or other third-party surety posts cash bail for a defendant, the clerk shall accept payment by credit card, debit card, or other electronic funds transfer and shall not collect the service fee authorized by said statute;

**s. MARRIAGES:** Beginning July 6, 2020, marriages shall be performed in Marriage Court or at courthouses only by appointment;

**t. OTHER:** Non-essential gatherings, meetings, and travel are canceled, and orders to attend programs, including, but not limited to, Traffic Safety School and SWAP, are entered and continued until rescheduled; as needed, further information shall be published on the court's website: http://www.cookcountycourt.org.

**IT IS FURTHER ORDERED** that further resumption of operations shall be pursuant to order of the chief judge;

**IT IS FURTHER ORDERED** that this order supersedes Cook County Cir. Ct. G.A.O. 2020-01 (eff. May 28, 2020); and

**IT IS FURTHER ORDERED** that, except as otherwise provided herein, this order is effective July 31, 2020.

Dated this 29th day of July 2020.

**ENTER:**

ENTERED
JUDGE TIMOTHY EVANS - 1592

JUL 2 9 2020

DOROTHY BROWN
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY IL
DEPUTY CLERK

Timothy C. Evans
Chief Judge